## MILLEDGEVILLE BANKING COMPANY *et al.* v. McINTYRE ALLIANCE STORE *et al.*

Under the law announced by this court in the case of *Weihl, Probasco & Co. et al.* v. *Atlanta Furniture Manufacturing Co. et al.,* 89 *Ga.* 297, and in view of the evidence, the court erred in directing the jury to return a verdict finding the mortgages of the plaintiffs in error void. This case is distinguishable from that of *Lowry Banking Co. et al.* v. *Empire Lumber Co. et al.,* 91 *Ga.* 624.

May 23, 1896. By two Justices. Argued at the last term.

Equitable petition. Before Judge Hart. Wilkinson superior court. April term, 1895.

*D. B. Sanford, Roberts & Pottle* and *F. Chambers,* for plaintiffs in error.

LUMPKIN, Justice.

Certain creditors of the McIntyre Alliance Store, a mercantile corporation, brought against it an equitable petition for injunction and the appointment of a receiver, to which the directors of the corporation and several preferred cred-

itors in whose favor mortgages had been executed were also made parties defendant. The petition attacked these mortgages upon two grounds: (1) because given by the president without authority legally conferred upon him by the board of directors or stockholders of the corporation; and (2) because the execution and delivery of the same were unjust and fraudulent acts of discrimination against petitioners, intended to hinder, delay and defraud them in the collection of their legal and just claims against the defendant corporation, which was insolvent. The court directed a verdict finding the mortgages void. To this the Milledgeville Banking Company and S. Waxelbaum & Sons, mortgagees, excepted.

The record shows that the mortgages given to these parties were duly authorized by a quorum of the directors at a lawful meeting, and that they were given to secure *bona fide* debts of the corporation; so it seems clear that the plaintiffs entirely failed to sustain the first of the two above stated grounds. It is, therefore, evident that the trial judge based his direction to the jury upon the second ground of attack made upon these mortgages, viz: that the execution and delivery of the same constituted an illegal and unjust discrimination against petitioners; though the record fails to disclose the precise theory upon which the judge's conclusion was reached.

The evidence shows that prior to the execution of the mortgage in favor of the Banking Company, it had accepted certain promissory notes of the corporation, which were indorsed by certain of its directors. The original indebtedness to Waxelbaum & Sons was about $2,500, and at their request, some of the directors executed their joint promissory note for the sum of $3,000 and delivered the same to Waxelbaum & Sons to be held as collateral security for the payment of their demand against the corporation. Subsequently, they were given a mortgage for $851.78, to secure a note cotemporaneously executed for that amount, which

represented the balance due upon the original indebtedness; but whether or not Waxelbaum & Sons surrendered the $3,000 note held by them as collateral security, does not appear. In the light of the brief submitted by counsel, we presume that the trial judge rested his decision upon the ground that the directors of the defendant had no power or authority to execute the mortgages in question, because the giving of them necessarily resulted in the directors deriving an incidental benefit thereunder, their effect being to relieve the directors, to a greater or less extent, of the individual liability incurred by them. Such, indeed, is the only theory, so far as we have been able to discover, upon which these mortgages could be attacked as void. We shall therefore deal with the case upon the assumption that this was the question passed upon by the court below.

As to the mortgage given to the Milledgeville Banking Company, we have no difficulty in reaching the conclusion that it cannot properly be held inoperative because of the fact that it was given to secure the payment of notes which had previously been indorsed by directors of the corporation. This precise question arose in the case of *Weihl, Probasco & Co.* v. *Atlanta Furniture Manufacturing Co. et al.*, 89 *Ga.* 297, wherein this court held: "A creditor of a corporation by promissory note on which some of the stockholders or directors are indorsers, may, as further security for the debt, take *bona fide* from the corporation a mortgage upon some of the corporate property, even if the corporation be insolvent at the time of its execution. . . . And that the indorsers may incidentally be benefited by enforcing the mortgage, constitutes no valid reason why the mortgagee should be enjoined or why the mortgaged property should be placed in the hands of a receiver." We now confidently adhere to the ruling then made.

In *Lowry Banking Co. et al.* v. *Empire Lumber Co. et al.*, 91 *Ga.* 624, it was held that: "On principles of general law, the directors of an insolvent corporation cannot,

to the prejudice of any of its creditors, indemnify by mortgage upon its assets one or more of their own body against loss by reason of his or their suretyship for the corporation upon liabilities already incurred, such indemnity not being made in the execution or performance of any agreement or undertaking entered into at or prior to the time when the liabilities were incurred. Nor can they, in a like case, indemnify a cosurety of one or more of the directors, inasmuch as the indemnity of one surety inures by operation of law to the benefit of the others." That case, however, is clearly distinguishable from the case at bar, and in no wise conflicts with the decision rendered in the case first above cited. It is a principle recognized in equity from time immemorial, that a trustee can derive no personal benefit to himself from the exercise of powers conferred upon him under the trust; and as the directors of an insolvent corporation hold its assets as a trust fund for the benefit of creditors, equity will not allow such directors to secure themselves from loss to the injury of the creditors whom they represent in the capacity of trustees. In the case cited from 91 *Ga.*, it plainly appeared that the action taken by the directors had but a single purpose, viz: to protect and secure themselves at the expense of all other creditors. They were simply taking care of themselves, having no other object in view, and what they did in seeking to accomplish their end was directly antagonistic to the rights and interests of creditors for whom they were really fiduciary agents. Leaving themselves out of consideration, these directors might have preferred one or more creditors to other creditors, but they could not prefer themselves to any creditor. Had they in good faith been endeavoring to secure creditors who were asking to be preferred, it would, as in the present case and in the case cited from 89th *Ga.*, have been a different matter; for where directors, in behalf of the corporation, have simply undertaken to prefer certain of its *bona fide* creditors at their instance and upon their

demand, the case presented is one in which a court of equity has no power to interpose or interfere, for the directors have done no more than they were expressly authorized by law to do. Section 1953 of the code declares that "a debtor may prefer one creditor to another, and to that end he may *bona fide*·give a lien by mortgage or other legal means." A corporation has an equal right with an individual in this regard; and when it acts regularly through its legally appointed agents, no court has the power to question their authority, save only when they attempt to abuse such authority by exercising the same unjustly and inequitably in furtherance of their own personal interest and gain. As ruled in the case cited from 89 *Ga.*, the right of the debtor corporation to prefer a creditor, and the right of the creditor to be preferred, cannot be lost simply because, as a mere incident to the transaction by which the preference is effected, the directors may themselves gain some benefit. It is one thing to restrain a trustee from abusing powers conferred upon him by using the same for his individual benefit and advantage alone, and quite another to deprive a *bona fide* creditor of the benefit of a mortgage which he in entire good faith accepted, and had a legal right to accept, from his debtor. In the latter case, the effect of setting aside the mortgage would be to deprive the preferred creditor of an advantage over less diligent or less fortunate creditors, which he had honestly and legally gained, and which the law recognizes as perfectly legitimate and just.

In the present case, it distinctly appeared that both the mortgages in question were given at the instance and demand of the mortgagees, who, so far as appears, were justly entitled to the preference they thus obtained over other creditors. It cannot be contended that the directors had not the legal power, in behalf of the corporation, to prefer creditors; and there is not the slightest suggestion that they failed to exercise this power in a perfectly lawful and proper manner.

We, think the mortgage in favor of Waxelbaum & Sons stands upon as good a footing as does that executed in favor of the Banking Company.    It is true that the directors, or some of them, had given to Waxelbaum & Sons a joint promissory note, binding upon each individually, as collateral security for the payment of the debt incurred by the corporation; but if Waxelbaum & Sons became dissatisfied with the security thus given them, we see no reason why they could not very properly request that their claim be secured by mortgage, or why, upon getting the same, they are not entitled to hold it and reap the benefit to be derived from it.    They certainly thereby gained no advantage over the complaining creditors other than the law expressly allows; and having kept strictly within the bounds of their legal rights in securing their preference, even a court exercising equitable jurisdiction has no power to restrain them from enforcing their mortgage, or to declare the same inoperative or void in their hands as against unsecured creditors.

For the reasons above expressed, we cannot concur in the opinion entertained. by the court below with reference to the validity of the mortgages held by the plaintiffs in error, and to this extent hold that error was committed in directing a verdict finding the same void.  *Judgment reversed.*