## McEWEN *v.* KELLY *et al.*

1. Directors of a trading corporation must exercise ordinary care and prudence in the administration of its affairs. They may commit the active management of the business to authorized officers; but this will not relieve them from the duty of reasonable supervision.

2. A trustee in bankruptcy of such a corporation succeeds to any right which it may have to sue directors and officers for a breach of duty, resulting in loss.

3. In a solvent going concern directors are the agents and fiduciaries of the corporation rather than of its creditors; but, under some circumstances, creditors of the corporation may have a cause of action against its directors on account of losses occurring from their maladministration, and ultimately resulting in injury to the rights of such creditors.

4. The allegations of the petition considered, and held not to show a case for recovery against the directors of the corporation, except the one who was also secretary and treasurer.

5. After a judgment has been entered sustaining a demurrer to an action brought against three defendants, and dismissing the entire case, and

while the case is pending in this court on a bill of exceptions assigning error on such judgment, the judge of the trial court is without jurisdiction, even by consent of counsel, to enter another judgment reciting that it was intended to overrule the demurrer as to one of the defendants, and altering the former judgment accordingly.

OCTOBER 15, 1913.

Equitable petition. Before Judge Fite. Bartow superior court. November 11, 1912.

McEwen, as trustee in bankruptcy of the Southern Iron Company, brought suit against W. M. Kelly, W. H. Totten Jr., and W. C. Satterfield, seeking to recover $3,490.57. So far as necessary to be set out, the allegations were as follows: Kelly, Satterfield, and Totten formed a partnership, in the latter part of the year 1905, for the purpose of mining and shipping ore, which continued until October 23, 1906, when a charter was granted to them. During the continuance of the partnership Kelly was the treasurer. All of the stock in the corporation was taken by the three, Kelly taking 34 shares, and each of the others 33, and the three elected themselves directors. During the continuance of the partnership the other two partners frequently asked Kelly for "a statement of the partnership," and he promised to make them a full and complete statement of its affairs, but failed to do so. He drew numerous drafts on Totten to meet the expenses of the partnership. Totten and Satterfield became suspicious of Kelly and of his handling of the business. Upon incorporation, Totten and Satterfield intended to elect Satterfield secretary and treasurer, and Totten nominated him for that office and Kelly for president; but Kelly, winking at Totten and shaking his head, stated that Totten should have the honors of the corporation, and nominated him for president, Satterfield for vice-president, and himself for secretary and treasurer. All of them appear to have acquiesced in this, and the election was accordingly made. At some unspecified time prior to January 1, 1907, Kelly wrote to Totten, who was a non-resident, that he did not wish Satterfield to have charge of the office of secretary and treasurer, and if it were given to him, he (Kelly) would withdraw from the company. It was further alleged that Totten "was unable to get any statement at that time, or between the date of incorporation and said January 1, 1907, from said Kelly as to the business of said corporation." On or about January 1, 1907, Kelly made to Totten and Satterfield a statement of the business of the

company "that was unsatisfactory and meagre, and an extremely poor showing of the business of the company." After January 1, 1907, Kelly established the practice of drawing a draft on Totten for the amount of the pay-roll and sending to Totten a check for the amount, so that Kelly could cash the draft and Totten could deposit the check in Cincinnati, Ohio, and pay the draft, thus getting the use of the money for four or five days without interest, —in other words, indulging in the practice known to the business world as "kiting." Totten protested against this, but Kelly gave a plausible explanation of it. In April, 1907, Kelly telegraphed to Totten to remit to him $600 or $700 to pay an open account. Totten went to Cartersville, the home office of the company, and called a meeting of the stockholders, at which Kelly was deposed from office, and a new secretary and treasurer elected. Kelly turned over to his successor "what purported to be the books of the company." They were audited by the direction of Totten and Satterfield, and the "auditor reported  .  .  that W. M. Kelly had expended from the funds of the company the sum of $1,655.33, for which there appeared to be no authority from the officers or directors of said company, and that in addition thereto said W. M. Kelly was due said company the sum of $2,835.24 in cash which had not been turned over to his successor in office." Kelly admitted owing these amounts, and in July paid $1,000, leaving a balance of $3,490.57. Later he gave a check for $1,000 more, but payment was refused by the bank on which it was drawn. On November 4, 1907, a petition in involuntary bankruptcy was filed against the company, and it was duly adjudicated a bankrupt, and the plaintiff was appointed its trustee in bankruptcy.

The court sustained a demurrer to the petition, and dismissed the action; and the plaintiff excepted. The supplemental order passed by the court is noticed in the opinion.

*John T. Norris*, for plaintiff.

*Thomas W. Milner & Son* and *Neel & Neel*, for defendants.

LUMPKIN, J. (After stating the foregoing facts.)

1. Directors of a private corporation occupy a somewhat peculiar position. They have been variously classified as agents, mandatories, bailees, and trustees; and it has been sought to define their duties and liabilities to the corporation and its stockholders on the basis of such relations. A great deal of learning has been

expended, and perhaps some of it wasted, in efforts to rigidly apply one or another of these analogies to facts to which it has not always been fully applicable. Directors are agents, but they are also agents clothed with a fiduciary character; and while they are not express or technical trustees, they are selected to manage the affairs and property of the corporation for its benefit, and they bear to it and to its stockholders a relation which in many respects may be called a trust relation; and thus by numerous courts they have been called trustees. Aside from any express statutory liability, those who accept the position of directors impliedly undertake to exercise ordinary care and diligence in discharge of the duties thus committed to them. They may commit the active transaction of the business to duly authorized officers; but this does not absolve them from the duty of reasonable supervision. Some courts have declared that they are only liable for gross negligence or breach of duty resulting in injury. But in some, probably most, of the cases so declaring, it will be found that the failure of directors to use ordinary care in supervision has been treated as amounting to gross negligence. Thus in Ham v. Cary, 82 N. Y. 65 (37 Am. R. 546), it was said that "when one voluntarily takes the position of trustee or director of a corporation, good faith, exact justice, and public policy unite in requiring of him such a degree of care and prudence, and it is a gross breach of duty—crassa negligentia—not to bestow them." In 2 Thompson on Corporations (2d ed.), § 1268, it is said: "While they are not held responsible for ordinary mistakes or errors of judgment, they are liable for losses and waste of money and property occurring from neglect or inattention to the business or the wilful violation of their duties. It is true that the degree of diligence is to be determined in each case in view of all the circumstances, such as the character of the corporation, the condition of its business, the usual method of managing such companies, as well as all other relevant facts." Breach of duty and loss or damage must concur, to create liability. In Briggs v. Spaulding, 141 U. S. 132 (11 Sup. Ct. 924, 35 L. ed. 662), the decision of the majority of the court was concurred in by five Justices, while four strongly dissented. The Justices differed as to whether the facts there involved showed a case for holding certain directors liable, and the discussions in the two opinions are interesting. We deem it unnecessary here to

deal with the exercise of discretion by directors, or the ordinary rule as to it, or the question whether liability may arise from its gross or flagrant abuse. Unfortunately some directors appear to think that they have fully discharged their duties by acting as figureheads and dummies; but this is a mistake, and a delusion from which some of them are now and then awakened by a judgment for damages arising from allowing the corporation to be looted while they sat negligently by and looked wise.

2. A trustee in bankruptcy succeeds to any right of the corporation to sue for damages resulting to it by a breach of duty on the part of its directors. 2 Thomp. Corp. (2d ed.) § 1316.

3. In a solvent, going concern, directors are the agents or fiduciaries of the corporation, not of its creditors. But directors are not wholly without duties to creditors. They can not misappropriate the corporate assets, or give them away, so that creditors are prevented from collecting their debts; and under some circumstances a trust or quasi trust relationship exists toward creditors. Thus it has often been held that in cases of insolvency all of the assets are applicable to the payment of debts and are not for distribution among stockholders, and that accordingly the directors stand in a trust relation toward creditors. In cases where, aside from statutory provisions, creditors have been held to have a right to sue directors on account of losses arising from misconduct or negligence, sometimes the decision has been based on the theory of a trust or quasi trust relationship, and sometimes on the idea that the liability of the directors to the corporation was an equitable asset, which the creditors might subject, if necessary. 2 Thomp. Corp. (2d ed.) § 1313; *Tatum* v. *Leigh,* 136 *Ga.* 791 (72 S. E. 236, 25 Ann. Cas. (1912D), 216).

A protracted discussion of the various decisions would be of no benefit. Light on the general subject may be found in Thompson's Liability of Officers and Agents of Corporations; 2 Thomp. Corp. (2d ed.) § 1265 et seq.; 10 Cyc. 828 et seq. (by the same author) ; Hodges v. New England Screw Co., 1 R. I. 312 (53 Am. D. 624, and note on page 637 et seq.) ; *Schley* v. *Dixon,* 24 *Ga.* 273 (71 Am. D. 121) ; *Fitzpatrick* v. *McGregor,* 133 *Ga.* 332, 342 (65 S. E. 859, 25 L. R. A. (N. S.) 50).

4. We now come to consider the facts of this case in the light of the principles above announced. The suit was by the trustee in ·

bankruptcy of the corporation. The defendant Kelly. was charged with misappropriation of corporate funds while acting as secretary and treasurer. The other two defendants were sought to be held liable on the ground of negligence. There was no charge of knowledge of or participation by them in his misappropriation. Throughout the petition the allegations are vague, general, and lacking in any direct statements to charge these two defendants with any specific breach of duty, resulting in damages to the corporation or the creditors. It was alleged, that, while the firm business continued, the other two defendants asked Kelly for a statement, but did not receive any, and that he drew drafts on Totten. There was no allegation that there was any partnership agreement, rule, or custom to have statements, or that the books were not accessible to the other members of the firm, or that any wrong was done to the partnership, or that the drafts on Totten were improper or unauthorized. After the incorporation, the three defendants were not only directors, but owned all of the stock in the corporation, and were then substantially the only parties at interest, so far as this record shows. For some two months after the incorporation no statement was made by the secretary and treasurer. It does not appear that there was any by-law, rule, practice, or custom requiring it sooner; and only inferentially is it alleged that it was asked for or could have been made earlier. The statement which was made is characterized as "unsatisfactory and meagre;" but it does not appear that it was untrue, or what was the matter with it. Indeed it does not appear whether it was unsatisfactory at that time to Totten and Satterfield, or was later unsatisfactory to the pleader. That it was "an extremely poor showing of the business of the company" does not allege any falsity or error. If the business itself were poor, the showing would probably not be good. Kelly indulged in some "kiting" for the company, but he made some "plausible" explanation, and it does not appear that the explanation was untrue or the kiting was unnecessary or against the corporation's interests. In April, 1907, he called on Totten for $600 or $700. He was thereupon deposed, and the books audited. It was reported by the auditor that Kelly had expended $1,655.33, for which there appeared to be no authority from the officers or directors. What this was expended for is not stated. It was also reported that he had failed to turn over to his successor $2,835.24

in cash. When these expenditures were made, or how long he had been a defaulter, does not appear; nor is there anything to show that an examination of the books at an earlier date would have disclosed any default. After its discovery Totten and Satterfield endeavored to collect the amount due by Kelly, and there is no complaint that their efforts were not diligent, though in part unavailing. It was alleged that no bond was required of Kelly. But no by-law or custom requiring such bond was averred; nor did the allegations suffice to show that it was negligence not to make such a requirement. In its last analysis, the effort to hold Totten and Satterfield liable rests on alleged negligence in the election of Kelly to the position of secretary and treasurer, and the failure to discharge him sooner. The petition is not lacking in adjective characterizations of the conduct of these two defendants; but under the vague, general allegations, we do not think that it makes out a case of breach of duty on their part, with damages resulting therefrom. As to these defendants, the demurrer was properly sustained.

5. As to Kelly, misappropriation of assets and admitted liability were charged. The order in the record dismisses the entire case. An agreement, and a copy of an order passed by the presiding judge after the bill of exceptions had been signed and transmitted to this court, were later filed here. From these it seems that the order dismissing the case as to Kelly was entered by mistake, as the court intended to overrule the demurrer as to him. The judge, however, was without authority to change a judgment as to which exception was pending in this court; nor could he do this even by consent. He having dismissed the action, and the case having been brought to the Supreme Court, it was out of his jurisdiction. We must deal with the judgment as rendered and brought to this court for review. We therefore affirm the judgment as to Totten and Satterfield, and reverse the judgment as to Kelly.

*Judgment affirmed in part, and reversed in part. All the Justices concur.*