**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**August 10, 2017**

# In the Court of Appeals of Georgia

A17A0727. GEORGIA COMMERCIAL STORES, INC. v. FORSMAN.

A17A0728. FORSMAN v. GEORGIA COMMERCIAL STORES, INC.

BARNES, Presiding Judge.

Georgia Commercial Stores, Inc. ("Georgia Commercial") is a judgment creditor of Pargar, LLC, an insolvent company. Daniel T. Forsman was the managing member of Pargar who controlled its day-to-day operations. Unable to collect on its debt from Pargar, Georgia Commercial sued Forsman to recover an alleged preferential payment that Forsman authorized Pargar to make to himself when Pargar was insolvent and faced foreclosure on all of its assets. Georgia Commercial alleged several causes of action against Forsman, including breach of fiduciary duty and violation of Georgia's Uniform Fraudulent Transfers Act, OCGA § 18-2-70 et seq.

("UFTA").[1] The trial court granted summary judgment to Forsman and denied it to Georgia Commercial on the latter's breach of fiduciary duty claim. The trial court denied summary judgment to Forsman on Georgia Commercial's UFTA claim. The parties now appeal the summary judgment rulings in these companion cases.

In Case No. A17A0727, we conclude that genuine issues of material fact exist as to whether Forsman breached his fiduciary duty to conserve and manage the assets of Pargar in trust for its creditors by causing Pargar to pay him $239,011 when the company was insolvent and faced foreclosure on all of its assets. Accordingly, we reverse the trial court's grant of summary judgment to Forsman on Georgia Commercial's breach of fiduciary duty claim, and we affirm the trial court's denial of summary judgment to Georgia Commercial on that claim. In Case No. A17A0728, we conclude that genuine issues of material fact exist as to whether the $239,011 payment to Forsman was made with the intent to defraud Pargar's creditors and therefore affirm the trial court's denial of summary judgment to Forsman on Georgia Commercial's UFTA claim.

---

[1]UFTA was revised and renamed the Uniform Voidable Transactions Act in 2015 but those revisions are not applicable here. See OCGA § 18-2-70; Ga. L. 2015, p. 996, § 4A-1/SB 65. See also Ga. L. 2015, p. 996, § 7-1(d)/SB 65 (Uniform Voidable Transaction Act does not apply to transfers made or obligations incurred before July 1, 2015).

Summary judgment is appropriate only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c).

> Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant or denial of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citation and punctuation omitted.) *Essien v. CitiMortgage*, 335 Ga. App. 727, 728 (781 SE2d 599) (2016).

So viewed, the record reflects that Pargar was a Georgia limited liability company formed in December 1998. Pargar had two members, Forsman and the Prudential Real Estate Financial Services of America, Inc. ("Prudential"), with Prudential controlling a majority of the membership interests. Forsman, a certified public accountant with significant prior experience as a controller and chief financial officer, managed Pargar's day-to-day operations and served as its sole Director, President, Treasurer, and Secretary. Prudential, however, had to approve all of Pargar's significant financial transactions.

3

Upon its formation, Pargar purchased an existing realty company that was valued at over $16 million. Pargar funded the purchase in part through an $11,750,000 loan obtained from Prudential. The Prudential loan was secured by a first priority blanket security interest in all of Pargar's assets and a pledge of all of Pargar's membership interests not already owned by Prudential. The Prudential loan had an original maturity date of December 31, 2005, which was later extended to June 30, 2012. Pargar also later obtained a $250,000 loan from Forsman pursuant to an unsecured promissory note.

During 2007, Pargar entered into a written lease agreement to rent certain property in Dunwoody for a period of 10 years, with a lease termination date of July 31, 2017. Georgia Commercial subsequently purchased the property, assumed the lease, and became Pargar's landlord.

Several years later, when the Prudential loan to Pargar matured on June 30, 2012, Pargar was unable to repay it. Pargar's financial records reflect that it was insolvent both on a "going concern" basis because it was unable to repay all of its debts as they matured and on a "balance sheet" basis because its debts exceeded the fair valuation of its assets. According to Pargar's financial records, the total value of Pargar's assets was $7,223,403, but it still owed $8,496,012 on the Prudential loan.

4

During this same time period in 2012, Forsman, acting in his capacity as Pargar's managing member, had Pargar pay him $239,011 to satisfy the outstanding balance of the unsecured loan he had previously extended to the company. The payment to Forsman was made with the knowledge and approval of Prudential.

In March 2013, when the Prudential loan remained unpaid and Pargar's insolvent financial condition remained unchanged, Prudential foreclosed on its first priority security interest in Pargar's assets and on Forsman's membership interest in Pargar. Prudential then sold Pargar's remaining assets and began winding down the company's affairs.

Pargar made monthly lease payments to Georgia Commercial through March 2013 when Prudential conducted the foreclosure, but Pargar defaulted on its payments to Georgia Commercial from that point forward and vacated the leased property. Georgia Commercial was notified of Prudential's foreclosure and sale of Pargar's assets, but not of the $239,011 payment made to Forsman.

Georgia Commercial sued Pargar for the rent due for the remaining term of the lease and obtained a judgment against Pargar in the principal amount of $1,051,702, plus interest. During post-judgment discovery, Georgia Commercial first learned of

5

the $239,011 that Pargar paid to Forsman in 2012 based on his previous loan to the company.

Georgia Commercial subsequently filed the instant action against Forsman, contending that Georgia Commercial had been unable to collect on its judgment against Pargar in part because of the allegedly improper $239,011 payment to Forsman that occurred when Pargar was insolvent and foreclosure on its assets was imminent. Georgia Commercial sought imposition of a constructive trust and disgorgement of the $239,011 from Forsman, and it alleged multiple causes of action against him in its complaint, as amended, including breach of fiduciary duty and intentional fraudulent transfer in violation of the UFTA.

After the parties filed cross-motions for summary judgment, the trial court granted summary judgment to Forsman and denied it to Georgia Commercial on the latter's breach of fiduciary duty claim, concluding that Georgia Commercial had failed to prove a sufficient causal connection between the alleged breach and its alleged injury.[2] The trial court denied summary judgment to Forsman on Georgia Commercial's UFTA claim for intentional fraudulent conveyance, concluding that

---

[2] The trial court granted summary judgment in favor of Forsman on several other claims brought against him by Georgia Commercial, but those claims are not at issue in these appeals.

genuine issues of material fact existed as to whether the payment to Forsman in 2012 was made with the actual intent to hinder, delay, or defraud Pargar's creditors. These appeals followed.[3]

*Case No. A17A0727*

1. Georgia Commercial contends that the trial court erred in granting Forsman's motion for summary judgment, and denying Georgia Commercial's cross-motion for summary judgment, on Georgia Commercial's breach of fiduciary duty claim. Because genuine issues of material fact exist that preclude the grant of summary judgment to either party, the trial court erred in granting summary judgment in favor of Forsman on Georgia Commercial's claim for breach of fiduciary duty.

To support a claim for breach of fiduciary duty, a plaintiff must prove the existence of such a duty, the breach of that duty, and injury proximately caused by the breach. *Engelman v. Kessler*, 340 Ga. App. 239, 246 (2) (797 SE2d 160) (2017).

> A fiduciary confidential relationship arises where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the

---

[3] These appeals originally were filed in the Supreme Court of Georgia, which transferred them to this Court.

7

relationship between partners, principal and agent, etc. Such relationship may be created by law, contract, or the facts of a particular case.

(Citation and punctuation omitted.) *Megel v. Donaldson*, 288 Ga. App. 510, 515-516 (5) (654 SE2d 656) (2007). See OCGA § 23-2-58.

"In a solvent, going concern, directors are the agents or fiduciaries of the corporation, not of its creditors." *McEwen v. Kelly*, 140 Ga. 720, 724 (3) (79 SE 777) (1913). In contrast, when a company becomes insolvent, "the directors stand in a trust relation toward creditors." Id. See *Bank Leumi-Le-Israel v. Sunbelt Indus.*, 485 FSupp. 556, 559 (S.D. Ga. 1980) ("In the case of an insolvent corporation, the directors and officers stand as trustees of corporate properties for the benefit of creditors[.]"). Hence, "the directors of an insolvent corporation, who originally stood in a fiduciary relation to the company, become placed in a fiduciary relation to its creditors." (Citation and punctuation omitted.) *Lowry Banking Co. v. Empire Lumber Co.*, 91 Ga. 624, 631 (17 SE 968) (1893).

Relevant here is that Georgia courts have recognized that the managing officers and directors of a corporation are charged with the duty of conserving and managing the remaining assets of an insolvent corporation in trust for the creditors. Accordingly, when a corporation becomes insolvent its directors are bound to manage the remaining assets for the benefits of its creditors, and cannot in any manner use their

8

powers for the purpose of obtaining a preference or advantage to themselves. Thus, corporate officers and directors may not give preference to existing debts which the corporation owed to other persons, and for which such officers and directors were primarily liable unless a preference or payment is made in the performance of an agreement entered into at or prior to the time when the liabilities to the creditors were incurred, or before the insolvency of the corporation. Consistent with this duty, any scheme or device, the purpose of which is to indemnify the owners, officers, or directors of a corporation against loss, whether as creditors or as endorsers of notes given by the corporation or otherwise, constitutes legal fraud.

(Citations and punctuation omitted.) *United States Capital Funding VI v. Patterson Bankshares*, 137 FSupp.3d 1340, 1375 (II) (C) (S.D. Ga. 2015). See *Hickman v. Hyzer*, 261 Ga. 38, 40 (2) (401 SE2d 738) (1991); *Fountain v. Burke*, 160 Ga. App. 262, 263-264 (2) (287 SE2d 39) (1981) (physical precedent only); *Ware v. Rankin*, 97 Ga. App. 837, 838 (2) (104 SE2d 555) (1958).[4]

---

[4] The rule that directors owe a fiduciary duty to manage the remaining assets of an insolvent corporation for the benefit of its creditors originated in the common law and was later extended by Georgia courts to apply not only to directors, but also to managing officers and sole-owners of an insolvent corporation. See *Tindall v. H&S Homes*, No. 5:10-CV-044, 2011 WL 5827227, at *4-5 (M.D. Ga. Nov. 18, 2011) (discussing history of the rule). See also *Milledgeville Banking Co. v. McIntyre Alliance Store*, 98 Ga. 503, 506 (25 SE 567) (1896) ("It is a principle recognized in equity from time immemorial, that a trustee can derive no personal benefit to himself from the exercise of powers conferred upon him under the trust; and as the directors

If the managing officers and directors violate their fiduciary duty to the creditors of the insolvent corporation by making a preferential transfer of corporate assets to themselves,[5] a creditor may bring an action against the officers and directors seeking to set aside the transfer and recover the monies paid to them as impermissible preferences. See *Hodge v. Howes*, 260 Ga. App. 107, 110 (4) (578 SE2d 904) (2003); *Randall & Neder Lumber Co. v. Bowen-Rogers Hardware Co.*, 202 Ga. App. 497, 499 (1) (414 SE2d 718) (1992). See also *McEwen*, 140 Ga. at 724 (3) (noting that, "aside from statutory provisions," creditors have the right to sue the directors of the insolvent corporation based on the theory of a trust or quasi-trust relationship).

"The management duties of the . . . managers of a limited liability company are similar to the duties of the directors of a corporation." Kaplan's Nadler, 2 Ga.

---

of an insolvent corporation hold its assets as a trust fund for the benefit of creditors, equity will not allow such directors to secure themselves from loss to the injury of the creditors whom they represent in the capacity of trustees."); *Lowry Banking Co. v. Empire Lumber Co.*, 91 Ga. 624, 624 (2) (17 SE 968) (1893) (syllabus by court) (noting that rule arose out of "principles of general law"); *Ware*, 97 Ga. App. at 838 (2) (applying rule to managing officers of insolvent corporation); *Fountain*, 160 Ga. App. at 263-264 (2) (applying rule to sole owner and president of insolvent corporation).

[5] A debtor corporation is considered insolvent if, at the time the preferential transfer was made to the officer or director, "the property left or retained by the debtor . . . [was] not ample to pay . . . [its] existing debts." (Citations and punctuation omitted.) *Randall & Neder Lumber Co.*, 202 Ga. App. at 499 (1).

10

Corporations, Limited Partnerships & Limited Liability Companies, § 18-17 (Oct. 2016 update). Thus, like corporate directors of an insolvent corporation, the managing members of an insolvent limited liability company owe a fiduciary duty to the company's creditors to conserve and manage the remaining assets of the company in trust for the benefit of those creditors. See *In re McCook Metals*, 319 BR 570, 595 (3) (a) (Bankr. N.D. Ill. 2005) (concluding that the duties of directors in managing the assets of insolvent corporations "are fully applicable to managers of insolvent limited liability companies"). We therefore conclude that if a managing member of an insolvent limited liability company breaches his fiduciary duty to the company's creditors by making an improper preferential transfer of company assets to himself, a creditor may bring an action against the member to set aside the transfer and recover the funds impermissibly paid to that member. See *McEwen*, 140 Ga. at 724 (3); *Hodge*, 260 Ga. App. at 110 (4); *Randall & Neder Lumber Co.*, 202 Ga. App. at 499 (1).

Applying these principles to the present case, we conclude that Georgia Commercial came forward with sufficient evidence to support a finding that when Forsman, in his capacity as managing member, caused Pargar to pay him $239,011, he owed a fiduciary duty to Pargar's creditors arising out of Pargar's insolvency. As

11

previously noted, Georgia Commercial presented evidence that at the time of the payment, Pargar was insolvent both on a "going concern" basis because it was unable to repay all of its debts as they matured and on a "balance sheet" basis because its debts exceeded the fair valuation of its assets. Georgia Commercial presented further evidence that during the same time period, Pargar defaulted on its loan to Prudential and was liable to Prudential in an amount that exceeded its assets by over $1 million. This combined evidence, when construed in favor of Georgia Commercial, would support the conclusion that Pargar met the definition of an insolvent company at the time of the alleged preferential payment, thereby triggering Forsman's fiduciary duty to conserve and manage the assets of Pargar in trust for the benefit of its creditors.

Georgia Commercial also presented evidence that Forsman breached his fiduciary duty owed to Pargar's creditors, including Georgia Commercial.[6] Construed in favor of Georgia Commercial, the evidence would support a finding by a jury that Pargar, acting at the direction of managing member Forsman and with the approval

[6] Georgia Commercial was a creditor of Pargar at the time of the alleged preferential payment to Forsman based on the contractual payment obligations that Pargar owed to Georgia Commercial under the long-term lease. See OCGA § 18-2-1 ("Whenever one person, by contract or by law, is liable and bound to pay to another an amount of money, certain or uncertain, the relation of debtor and creditor exists between them."). As previously noted, Georgia Commercial later became a judgment creditor of Pargar.

of its other member Prudential, made the $239,011 payment to Forsman when Pargar was insolvent and faced foreclosure in which all of its remaining assets would be sold and the proceeds taken by Prudential to the exclusion of all other creditors. Furthermore, the evidence reflects that while Pargar informed Georgia Commercial by letter about the foreclosure and distribution of the proceeds of the foreclosure sale to its member Prudential, it omitted any reference to its distribution of funds to its other member Forsman and never disclosed that distribution to Georgia Commercial. Given this combined evidence, a jury could find that Pargar paid Forsman in an effort to indemnify and protect him against any loss resulting from the impending foreclosure and dissolution of the company in preference to all of Pargar's outside secured and unsecured creditors. "It thus becomes a jury question, under these allegations, whether payment to [Forsman] of sums due [him], at a time when the corporation was insolvent[,] . . . was in fact a mere scheme and device on the part of [Forsman] to indemnify [himself] against loss, and as such constituted a legal fraud." *Ware*, 97 Ga. App. at 839 (3).

Finally, Georgia Commercial presented evidence that it suffered an injury as a proximate result of Forsman's alleged breach of fiduciary duty. The evidence shows that Georgia Commercial is a judgment creditor of Pargar owed more than $1 million

13

for Pargar's default on its lease payment obligations. And, given the allegedly $239,011 preferential pay out to Forsman by Pargar, Georgia Commercial was left without the ability to look to those funds as a source for repayment from Pargar to partially satisfy its consent judgment. Under these circumstances, Georgia Commercial came forward with sufficient evidence that Forsman's alleged breach of fiduciary duty proximately caused it damage. See *United States Capital Funding VI*, 137 F. Supp.3d at 1376 (II) (C) (concluding that plaintiff could prove that it was damaged as a proximate result of the director defendants' breach of fiduciary duty through evidence that the alleged improper transfer by the defendants "left [the plaintiff] without the ability to look to that asset as a source of funds for repayment").

The trial court, however, concluded that Forsman was entitled to summary judgment on Georgia Commercial's breach of fiduciary duty claim because Georgia Commercial failed to come forward with sufficient evidence to create a jury issue over causation. In moving for summary judgment, Forsman argued that the proximate cause of Georgia Commercial's injury was Prudential's foreclosure and sale of all of Pargar's assets, which caused Pargar to stop making lease payments, rather than the $239,011 paid to Forsman. Forsman also argued that Georgia Commercial could not establish proximate cause because Prudential and another creditor, Prudential Real

14

Estate Affiliates, Inc. ("PREA"), held security interests in all of Pargar's assets and would have been entitled to the $239,011 in funds rather than Georgia Commercial, if those funds had not been paid out to Forsman. The trial court accepted Forsman's arguments and concluded that Georgia Commercial had failed to establish causation as a matter of law. The trial court's conclusion was erroneous.

As an initial matter, the fact that Prudential's foreclosure on its security interest and sale of Pargar's assets was *a* proximate cause of Georgia Commercial's inability to collect on its consent judgment against Pargar does not end the matter. It is well-established that "there may be more that one proximate cause of an injury." (Citation and punctuation omitted.) *Walker v. Giles*, 276 Ga. App. 632, 643 (2) (624 SE2d 191) (2005). And, as our Supreme Court has explained,

> the general rule is that if, subsequently to an original wrongful act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote, still if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act. . . . Moreover, it is axiomatic that questions regarding proximate

15

cause are undeniably a jury question and may only be determined by the courts in plain and undisputed cases.

(Citation and punctuation omitted.) *Ontario Sewing Mach. Co. v. Smith*, 275 Ga. 683, 686-687 (2) (572 SE2d 533) (2002).

Guided by these causation principles, we conclude that the evidence created a jury issue as to whether the $239,011 payment to Forsman and the subsequent foreclosure sale by Prudential were concurring proximate causes of Georgia Commercial's injury. In this regard, when the evidence is construed in favor of Georgia Commercial, a jury would be authorized to find that Forsman could have reasonably anticipated or foreseen, when he caused Pargar to make the $239,011 payment to him, that Prudential would foreclose on all of Pargar's assets, given Pargar's insolvency and its default on the loan from Prudential, and given that Forsman was the managing member of Pargar who controlled its day-to-day operations. Likewise, Pargar could have reasonably anticipated or foreseen, when the payment was made to Forsman, that Prudential would foreclose on all of its assets, given that Forsman and Prudential were members of Pargar whose knowledge could be imputed to the company. See *Graphic Arts Mut. Ins. Co. v. Pritchett*, 220 Ga. App. 430, 431 (1) (469 SE2d 199) (1995) ("A company is chargeable with the composite

16

knowledge acquired by its officers and agents acting within the scope of their duties."). Consequently, a jury could find that Prudential's foreclosure of Pargar's assets did not break the chain of causation between the payment to Forsman and Georgia Commercial's inability to collect on its consent judgment, but rather that the Forsman payment and subsequent foreclosure were concurrent proximate causes. Summary judgment to Forsman on the basis that the foreclosure sale was the sole proximate cause of Georgia Commercial's injury therefore was inappropriate. See *Ontario Sewing Mach. Co.*, 275 Ga. at 686-687 (2). Compare *Cieplinski v. Caldwell Elec. Contractors*, 280 Ga. App. 267, 276 (633 SE2d 646) (2006) (uncontroverted evidence showed that intervening act could not have reasonably been foreseen, and thus intervening act was sole proximate cause of plaintiff's injury as a matter of law).

The trial court also erred in concluding that Georgia Commercial could not establish causation because Prudential and PREA held security interests in Pargar's assets that were superior to Georgia Commercial's rights as a judgment creditor, such that Prudential and/or PREA rather than Georgia Commercial would have been entitled to the $239,011, if those funds had not been paid out to Forsman. The claims of a creditor that diligently pursues a cause of action challenging a preferential transfer made to an officer, director, or managing member of an insolvent company

17

are not reduced or defeated by the hypothetical claims of other creditors who have slept on their rights and have failed to challenge the preferential transfer. See *McLarty v. Emhart Corp.*, 227 Ga. 104, 106 (2) (179 SE2d 46) (1970). And, here, there is no evidence of record that any creditor other than Georgia Commercial has pursued any claims against Forsman for the alleged preferential payment.

For these combined reasons, we conclude that Georgia Commercial presented evidence sufficient to create a genuine issue of material fact as to whether Forsman breached his fiduciary duty to Pargar's creditors, including Georgia Commercial, by authorizing the $239,011 payment to himself when Pargar was insolvent and faced foreclosure, and as to whether the payment to Forsman proximately caused an injury to Georgia Commercial. The trial court thus erred in granting summary judgment to Forsman on Georgia Commercial's claim for breach of fiduciary duty.

*Case No. A17A0728*

2. In his cross-appeal, Forsman contends that the trial court erred in denying his motion for summary judgment on Georgia Commercial's claim of intentional fraudulent transfer in violation of the UFTA, OCGA § 18-2-74 (a) (1). According to Forsman, the uncontroverted evidence of record demonstrates that Pargar did not make the $239,011 payment to him with the actual intent to hinder, delay, or defraud

18

Georgia Commercial or other creditors. Given the standard applicable on summary judgment, we are unpersuaded.

The UFTA prohibits transfers by a debtor made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." OCGA § 18-2-74 (a) (1). "A creditor who can show a fraudulent conveyance has numerous remedies under the [UFTA,] including . . . avoidance of the transfer and attachment of the asset transferred." *Bloom v. Camp*, 336 Ga. App. 891, 894 (1) (785 SE2d 573) (2016), quoting Daniel F. Hinkel, 2 Pindar's Ga. Real Estate Law & Procedure, § 19:102 (7th ed., updated April 2015).

"Because actual intent to defraud is difficult to prove, the [UFTA] lists 11 nonexclusive factors (sometimes called 'badges of fraud') that can be considered in determining whether funds were transferred with the actual intent to defraud a creditor." *SRB Investment Svcs. v. Branch Banking & Trust Co.*, 289 Ga. 1, 3-4 (2) (709 SE2d 267) (2011). Specifically, OCGA § 18-2-74 (b) provides:

> In determining [whether a transfer was made with the actual intent to defraud a creditor], consideration may be given, among other factors, to whether: (1) The transfer or obligation was to an insider; (2) The debtor retained possession or control of the property transferred after the transfer; (3) The transfer or obligation was disclosed or concealed; (4) Before the transfer was made or obligation was incurred, the debtor had

19

been sued or threatened with suit; (5) The transfer was of substantially all the debtor's assets; (6) The debtor absconded; (7) The debtor removed or concealed assets; (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

The existence of badges of fraud is "relevant evidence as to the debtor's actual intent, from which the finder of fact may draw an inference of actual intent to defraud." (Citation, punctuation, and footnote omitted.) *SRB Investment Svcs.*, 289 Ga. at 5 (2).

Construed in favor of Georgia Commercial, the evidence in this case reflected the existence of at least three badges of fraud (namely, 1, 3, and 9) from which the jury could draw an inference that Pargar acted with the actual intent to defraud its creditors in making the $239,011 payment to Forsman. First, Forsman was the managing member of Pargar who controlled its day-to-day operations and served as its sole Director, President, Treasurer, and Secretary. Forsman thus was an "insider" of Pargar as that term is defined in the UFTA. See OCGA § 18-2-71 (7) (B) (i) - (iii) (an "insider" of a debtor corporation includes an "officer," "director," or "[a] person

in control of the debtor"). It follows that there was evidence that the transfer at issue was made to an insider, the first badge of fraud as set forth in OCGA § 18-2-74 (b) (1).

Second, the evidence reflects that Pargar sent a letter to Georgia Commercial describing the foreclosure and distribution of the proceeds of the foreclosure sale to its member Prudential, but omitting any reference to the distribution of funds to its other member Forsman. Georgia Commercial learned of the $239,011 payment to Forsman only later, while conducting post-judgment discovery in the litigation it had commenced against Pargar. This evidence, viewed in the light most favorable to Georgia Commercial, reflected that the payment to Forsman was concealed rather than disclosed to outside creditors, which falls under the third badge of fraud as set forth in OCGA § 18-2-74 (b) (3).[7]

---

[7] "Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." OCGA § 23-2-53. See *Inland Atlantic Old Nat. Phase I v. 6425 Old Nat.*, 329 Ga. App. 671, 676 (2) (766 SE2d 86) (2014) (suppression of material financial information by fiduciary constitutes fraud). As discussed supra in Division 1, a fiduciary relationship arose between Forsman and Pargar's creditors, including Georgia Commercial, in light of Pargar's insolvency.

21

Third and finally, the evidence reflects that at the time of the payment to Forsman, Pargar had defaulted on the Prudential loan, was unable to repay all of its debts as they matured, and its debts exceeded the fair valuation of its assets. Pargar therefore met the definition of an insolvent company under the UFTA. See OCGA § 18-2-72 (a), (b); *Target Corp. v. Amerson*, 326 Ga. App. 734, 741-742 (1) (g) (755 SE2d 333) (2014) (plaintiff seeking to prove that debtor was insolvent under the UFTA "was required to establish that, at the time of the conveyance, "the sum of [the debtor's] debts was greater than all of [its] assets, at a fair valuation," or that the debtor was "generally not paying [its] debts as they became due"). Hence, there also was evidence of the ninth badge of fraud as set forth in OCGA § 18-2-74 (b) (3).

Given the existence of these badges of fraud, we conclude that Georgia Commercial came forward with sufficient evidence to create a jury issue regarding whether Pargar acted with an actual intent to defraud its creditors in making the $239,011 payment to Forsman.[8] "Because fraud is inherently subtle, it may be proved

---

[8] Forsman argues that because Prudential was Pargar's creditor with a first priority security interest in all of Pargar's remaining assets and Pargar did not have sufficient assets to satisfy its obligations to Prudential, Pargar was not focused on its outside creditors like Georgia Commercial and did not intend to defraud them when it made the payment to Forsman. However, given the existence of several badges of fraud, a genuine issue of material facts exists as to Pargar's intent, and Forsman's argument is best left for a jury to consider.

22

by slight circumstances, and whether a misrepresentation is fraudulent and intended to deceive is generally a jury question." (Citation and punctuation omitted.) *Maxey v. Sapp*, 340 Ga. App. 116, 120 (796 SE2d 740) (2017). That is the situation here, as the trial court properly concluded when it denied Forsman's motion for summary judgment on Georgia Commercial's UFTA claim.

*Judgment affirmed in part and reversed in part in Case No. A17A0727. Judgment affirmed in Case No. A17A0728. McMillian and Mercier, JJ., concur.*