**SECOND DIVISION
BARNES, P. J.,
ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/**

**October 25, 2012**

# In the Court of Appeals of Georgia

A12A1267. TRUELOVE et al. v. BUCKLEY.

ADAMS, Judge.

Richard L. Buckley, Jr. d/b/a/ Press-A-Dent brought suit against Jeffrey B. Truelove and his mother Peggy M. Truelove (hereinafter collectively referred to as the appellants) seeking to have the transfer of certain real property (the "property") from Jeffrey to his mother declared void under section 18-2-74 and section 18-2-75 of the Uniform Fraudulent Transfers Act (UFTA). OCGA § 18-2-70 et seq. The trial court found Buckley was entitled to summary judgment under OCGA § 18-2-75 (b), and appellants filed the present appeal. Upon careful consideration, we now reverse the grant of summary judgment in favor of Buckley.

In 1998, Buckley obtained a judgment against Jeffrey Truelove in the amount of approximately $100,000 dollars, and a writ of fieri facias was filed, recorded and

renewed on the judgment. At the time the trial court's order was entered in the present case, this judgment remained mostly unsatisfied.

Jeffrey subsequently obtained the right to purchase the property at issue here as part of the settlement of a dispossessory action. But Jeffrey did not have the money to buy the property, so it was arranged that the property would be purchased by his mother Peggy instead and that the property would be deeded to her. However, according to the affidavit of the closing attorney, Peggy did not want the sellers to know she was the one actually buying the property, and the transaction was structured so that at the closing the property would be deeded to Jeffrey and transferred from Jeffrey to Peggy after the closing. The funds for the purchase were deposited in the closing attorney's trust account; those funds were dispersed at closing to the sellers and the property was deeded to Jeffrey. After the sellers left the closing, however, another deed was executed transferring the property to Peggy, and this bears the same date as the deed from the sellers to Jeffrey.[1] Also on or about the closing date, Peggy, as Lessor, and Jeffrey, as Lessee, executed a "10 Year Buy Out Lease Purchase

---

[1] Because the first deed from Jeffrey to Peggy was not properly witnessed, a corrected deed from Jeffrey to Peggy was executed and filed about one month later. However, for purposes of our analysis, we will assume the validity of the first deed from Jeffrey to Peggy.

Agreement" pursuant to which Jeffrey was to pay Peggy $700.00 a month to lease the property, with those payments going toward the purchase price of the property. The term of the lease purchase was for 120 months and would have expired on August 31, 2016, but Peggy rescinded the agreement on April 23, 2010 because Jeffrey failed to make all the payments due by that date. Nevertheless, Jeffrey was allowed to continue to lease the property for $400 a month, without any purchase rights.

Buckley filed the present case against appellants in 2010, seeking to have the transfer of the property from Jeffrey to Peggy declared fraudulent and void under OCGA § 18-2-74 and OCGA § 18-2-75, and he subsequently moved for summary judgment on his claim under OCGA § 18-2-75. The trial court determined that Buckley was entitled to summary judgment under subsection (b) of that section but found that material issues of fact precluded the grant of summary judgment under subsection (a).

1. We thus begin our analysis by considering whether the transfer was fraudulent as to Buckley under OCGA § 18-2-75 (b), which provides as follows:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

3

The trial court found that the evidence was undisputed that (1) Buckley's claim arose prior to the transfer; (2) Peggy was an insider as defined by OCGA § 18-2-71;[2] (3) Peggy knew of her son's insolvency and (4) the transfer was for an antecedent debt because Peggy provided the funds to buy the property and Jeffrey transferred the property to Peggy to satisfy this antecedent debt.

Citing OCGA § 18-2-22, appellants argue that the trial court nevertheless erred in granting summary judgment because no evidence was presented that the transfer was made with actual intent to delay, hinder or defraud creditors. However, that section was repealed by Ga. L. 2002, p. 141, § 2, effective July 1, 2002, and replaced by the current provisions of the UFTA. The first question we must address then is whether it is necessary to show actual intent in order to establish a fraudulent transfer under OCGA § 18-2-75.

The UFTA "is modeled on the Uniform Fraudulent Transfer Act promulgated by the national Conference of Commissioners on Uniform State Laws and adopted in various forms by 43 states and the District of Columbia." *Bishop v. Patton*, 288 Ga. 600, 606 (3) (b) (706 SE2d 634) (2011), disapproved on other grounds, *SRB*

---

[2] Pursuant to OCGA § 18-2-71 (7) an "[i]nsider" includes a relative of the debtor. And a "'[r]elative' means an individual related by consanguinity within the third degree as determined by common law . . . ." OCGA § 18-2-71 (11).

4

*Investment Svs. v. Branch Banking & Trust Co.*, 289 Ga. 1 (709 SE2d 267) (2011). For this reason, and in light of the dearth of Georgia decisions construing the provisions of the Georgia UFTA, we look to the decisions of other jurisdictions for guidance. E.g., *State v. Mayze*, 280 Ga. 5, 9 (622 SE2d 836) (2005) (sister state's analysis of similar constitutional and statutory provision persuasive although not controlling).

Concerning the issue of intent, the Supreme Court of North Dakota has explained that fraudulent transfers under the UFTA "are broadly separated into two classifications: actual fraud and constructive fraud . . . ." *Farstveet v. Rudolph*, 630 N.W.2d 24 (N.D. 2001). While actual or intentional fraud requires a showing of intent, "[c]onstructive fraudulent transfers are established conclusively, without regard to the actual intent of the parties, . . . ." Id. at 31 (2).

In Georgia, the provisions governing actual fraud appear in OCGA § 18-2-74, which is not at issue here, while OCGA § 18-2-75, the provision at issue in this case, governs constructively fraudulent transfers. In North Dakota, this identical provision is codified at N. D. Cent. Code § 13-02.1-05 (2), about which the North Dakota Court further expounded:

5

One of the innovations of the Uniform Fraudulent Transfer Act is its adoption of the preferential transfer concept. *See Prairie Lakes Health Care System v. Wookey*, 1998 SD 99, P14, 583 N.W.2d 405. It also has been described as constructive fraud or fraud in law. . . . [This section] 'renders a preferential transfer–i.e., a transfer by an insolvent debtor for or on account of an antecedent debt--to an insider vulnerable as a fraudulent transfer when the insider had reasonable cause to believe that the debtor was insolvent.' UFTA § 5, cmt. (2). While it has been held that debtors generally may prefer one creditor over another in applying assets to discharge their obligations, [this section] curtails this privilege if the debtor is insolvent at the time and the preference is to an insider. *Wookey*, 1998 SD 99, P14, 583 N.W.2d 405. The premise behind [this section], 'is that an insolvent debtor is obligated to pay debts to creditors not related to him before paying those who are insiders.' UTFA, Prefatory Note. The drafters of the revised Act intended this provision to be an attempt at diminishing the sometimes unfair advantages insiders possess when they are familiar with the debtor's financial status. *Wookey*, 1998 SD 99, P14, 583 N. W. 2d 405. Constructive fraudulent transfers are established conclusively, without regard to actual intent of the parties, . . . .

(Indention omitted.) *Farstveet*, 630 N. W. 2d at 30-31.

This finding comports with our own plain reading of OCGA § 18-2-75 (b). A showing of actual intent is not necessary under that section; rather a transfer of

6

property will be deemed fraudulent if it falls within the circumstances enumerated therein.

Further, as one Georgia district court has noted, "[i]t is noteworthy that Georgia's UFTA no longer contains language regarding a *transferee's* intent." *United States v. Sherrill,* 626 F. Supp. 2d 1267, 1276, n.10 (MD Ga. 2009). Thus, the fact that Peggy had no knowledge that Jeffrey had an outstanding judgment against him is irrelevant under the current version of the UFTA. Based on the foregoing, we find no merit to appellants' contention that summary judgment must be reversed because there was no evidence of actual intent to delay, hinder or defraud in this case.

But that does not end our inquiry. Appellants also opposed the grant of summary judgment to Buckley on the basis that this case did not involve an antecedent debt. With this contention we agree.

Although the term "debt" is defined broadly under Georgia's UFTA,[3] it is clearly limited by the term "antecedent." "[E]ssentially a debt is 'antecedent' if it is incurred before the transfer. . . . *Antecedent debt may be described as a debt*

---

[3] Pursuant to OCGA § 18-2-71 (5) a debt is a "liability on a claim." A claim is defined in OCGA § 18-2-71 (3) as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." For purposes of our analysis here, we will assume the existence of a debt.

*preexisting or prior to the transfer.*" (Emphasis supplied.) *In the Matter of: Cavalier Homes of Georgia, Inc.*, 102 B. R. 878 (Bankr. M.D. Ga.1989).[4]

In this case, Buckley argued and the trial court agreed that Jeffrey became indebted to Peggy when she paid for the property and it was deeded in his name, and that Jeffrey satisfied this preexisting debt by transferring the property to Peggy. However, we believe this narrow, piecemeal view ignores the essential nature of the transaction here, about which the undisputed evidence shows that (1) the property was purchased by Peggy; (2) it was briefly deeded to Jeffrey because he had the right to purchase the property; and (3) the property was transferred to Peggy on the same day and shortly after she purchased it. This evidence clearly shows that the transfer to Peggy was "at essentially the same time" that she purchased the property, and thus was not made to satisfy an "antecedent" debt.[5] *In re Hasbro, Inc. v. Serafino*, 37 F. Supp. 2d 94, 97 (DC Mass. 1999) (mortgage was not for antecedent debt when the

---

[4] We are mindful that "we apply the fundamental rules of statutory construction that require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. [Cits.] At the same time, we must seek to effectuate the intent of the legislature. OCGA § 1-3-1 (a)". *Slakman v. Continental Casualty Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003).

[5] Again, in light of the broad definition of "debt" under the UFTA, we are assuming the existence of a debt here.

loan was made at essentially the same time as the mortgage was granted.) See also *Bear Rock Franchise Sys. v. Hedlund (In Re: Hedlund),* 2010 Bankr. LEXIS 1840 (Bankr. D. Nebraska 2010) (question of fact existed concerning whether the transfer was "substantially contemporaneous" and thus not voidable under the constructive fraud provisions of Nebraska's UFTA). For this reason, we do not believe this was a constructively fraudulent, preferential, transfer the UFTA was intended to capture; it follows that the trial court's order granting summary judgment to Buckley on the basis that the transfer was fraudulent under OCGA § 18-2-75 (b) must be reversed.

2. Buckley also argues, however, that he was entitled to summary judgment under subsection (a) of OCGA § 18-2-75. But the trial court ruled adversely to Buckley on this issue, and he did not file a cross-appeal challenging that adverse ruling. See OCGA § 5-6-38; *Liu v. Boyd*, 294 Ga. App. 224, 226 (2) (668 SE2d 843) (2008); *Chester v. Ga. Mut. Ins. Co.*, 165 Ga. App. 783 (302 Ga. App. 594) (1983). Further, we do not believe this case comes within the exception that "a ruling that becomes material to an enumeration of error urged by an appellant may be considered by the appellate court without the necessity of a cross-appeal[,]" espoused by our Supreme Court in *Ga. Society of Plastic Surgeons v. Anderson*, 257 Ga. 710, 711 (1) (363 SE2d 140) (1987).

9

Moreover, we have examined Buckley's argument in support of this contention and find it to be without merit. A transfer will not be deemed fraudulent under OCGA § 18-2-75 (a)[6] if reasonably equivalent value is received for the transfer, and the trial court found that a jury must decide whether Jeffrey received reasonably equivalent value for the transfer based on the evidence that he was allowed to reside on the premises. Buckley does not directly challenge this ruling in his brief on appeal, but instead argues that appellants did not point to any evidence or make any argument that Jeffrey received anything in exchange for the property. But the trial court specifically rejected this contention, and noted this issue was raised and argued at the summary judgment hearing. Further, appellants stated as a material fact to be tried that the transaction was for a reasonably equivalent value. Based on the foregoing, we will not consider whether the trial court properly denied summary judgment to Buckley under OCGA § 18-2-75 (a).

*Judgment reversed. Barnes, P. J., and McFadden, J., concur.*

---

[6] Subsection (a) of OCGA § 18-2-75 provides that "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonable equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."