HAGEDORN, J.
*98 *210 ¶ 1 This is an appeal of a judgment in a garnishment action brought by Carol and Terrance Beck. Following a bench trial, the circuit court concluded that the Becks met their burden to prove fraudulent transfer under WIS. STAT. § 242.05(2) (2015-16)[1] by BidRX, LLC to Fiscal Intermediary Third Party Funds Services, LLC (Fiscal). The court awarded judgment against both BidRX and Fiscal. While BidRX and Fiscal objected to the circuit court's determination on multiple grounds, we agree with their contention that the evidence was insufficient to prove fraudulent transfer under § 242.05(2) because no evidence was introduced showing that the allegedly fraudulent transfers were made to satisfy an antecedent *211 debt. Because this is a statutory element the Becks must prove, the judgment must be reversed. The circuit court's judgment against BidRX was also improper because this is a garnishment action, BidRX was not a garnishee, and the Becks offer no statutory authority to support an award against BidRX in this case. For these reasons, we reverse.
BACKGROUND
¶ 2 In December 2016, the Becks obtained a $108,235 default judgment against BidRX for an unpaid promissory note. As part of their efforts to collect that judgment, the Becks filed a nonearnings garnishment summons and complaint in June 2017, naming BidRX as debtor and Fiscal and BMO Harris Bank as garnishees. The Becks alleged that Fiscal and BMO Harris had property-in this case money-which could be garnished based on the default judgment against BidRX.
¶ 3 Fiscal and BidRX filed an answer and a motion to dismiss because, among other reasons, the garnishment action was filed as part of the underlying lawsuit on the promissory note instead of being filed as a separate action as-they maintained-was required by WIS. STAT. § 812.01(2a). The circuit court denied the motion.
¶ 4 Per the statutory procedure governing garnishment actions (unlike normal civil cases), the Becks filed a reply to the answer. See WIS. STAT. § 812.14(1) - (2). In paragraph 5 of the reply, the Becks added fraudulent transfer as a ground for recovery:
[T]he Garnishee, Fiscal Intermediary Third Party Funds Services, LLC., is an entity created by and controlled by the Debtor and was created after the *212 commencement of the underlying lawsuit, but prior to the entry of Judgment.... The Garnishee was organized by Debtor's counsel .... To the extent that the fund was created after the commencement of this lawsuit, it is a fraudulent conveyance pursuant to [ WIS. STAT. ch. 242].
Fraudulent transfer was not mentioned in the initial complaint or in BidRX and Fiscal's answer.
¶ 5 The garnishment action proceeded to a bench trial, where the sole evidence admitted was a 300-plus page collection of bank records from five BMO Harris accounts-four in BidRX's name and one in Fiscal's name.[2] BMO Harris did not appear at trial, nor had it filed an answer as of the trial date.
*99 ¶ 6 Although no witness testimony was heard, the Becks offered their take on the relevance and meaning of the bank records. They maintained the records showed a number of transfers were made from BidRX's accounts to Fiscal, and that they constituted fraudulent transfers under WIS. STAT. ch. 242. The Becks argued Fiscal was an "insider" of BidRX under the law because Fiscal had been formed by an attorney working for BidRX, and a person the Becks claimed was an employee of BidRX appeared on the signature card for Fiscal's account. They maintained these transfers were fraudulent because BidRX was insolvent when the transfers were made.[3]
¶ 7 After the Becks rested their case, BidRX and Fiscal moved to dismiss on several grounds, including *213 lack of notice regarding the fraudulent transfer claim and failure to plead or prove the elements of fraudulent transfer.
¶ 8 After initially agreeing with BidRX and Fiscal that the evidence was insufficient to prove fraudulent transfer, the court reversed course and ruled in favor of the Becks. The court concluded Fiscal was an insider of BidRX, BidRX transferred $35,891.43 to Fiscal, and these transfers were fraudulent under WIS. STAT. § 242.05(2). Accordingly, the court granted a garnishment judgment in the amount of $35,891.43 against Fiscal. And despite the fact this was a garnishment action seeking property held by Fiscal and BMO Harris, the court also imposed judgment against BidRX in the amount of $2073.77. BidRX and Fiscal appeal the judgment.
DISCUSSION
¶ 9 We address two issues. First, we explore whether sufficient evidence supports the circuit court's legal conclusion that fraudulent transfers under WIS. STAT. § 242.05(2) occurred. Because no evidence supported the required statutory element that the transfers be for an antecedent debt, the circuit court's judgment against garnishee Fiscal must be reversed. Second, we consider whether the circuit court had authority to order judgment against BidRX in this action; we conclude it did not.[4]
*214 A. Fraudulent Transfer
¶ 10 BidRX and Fiscal challenge the circuit court's conclusion that the Becks provided sufficient proof of fraudulent transfer under WIS. STAT. § 242.05(2). This argument raises questions of statutory interpretation, issues we review de novo. State v. Wiedmeyer , 2016 WI App 46, ¶ 6, 370 Wis.2d 187, 881 N.W.2d 805.
¶ 11 Along with more than forty other states, Wisconsin has adopted the Uniform Fraudulent Transfer Act (UFTA)-a uniform "creditor-protection statute." Badger State Bank v. Taylor , 2004 WI 128, ¶¶ 40-41, 276 Wis.2d 312, 688 N.W.2d 439. The UFTA allows a creditor to attack transfers made by a debtor to third parties as fraudulent in certain circumstances. See WIS. STAT. §§ 242.04, 242.05. UFTA § 11, reflected in WIS. STAT. § 242.11, provides that the UFTA should be "applied and construed to effectuate its general purpose to make uniform the law ... among states enacting it"-an explicit *100 invitation for us to consider the way other jurisdictions have interpreted this same language. Given the absence of on-point Wisconsin cases, this statutory directive is most welcome here.
¶ 12 WISCONSIN STAT. § 242.05(1) - (2) corresponds to UFTA § 5(a) -(b). Unlike other provisions of the UFTA governing transfers made with fraudulent intent, *215 [5] § 242.05(1) - (2) deems certain transactions constructively fraudulent based on the circumstances of the transfer. See Badger State Bank , 276 Wis.2d 312, ¶ 38, 688 N.W.2d 439. Proving fraudulent intent is not necessary under § 242.05(1) - (2). See Badger State Bank , 276 Wis.2d 312, ¶ 38, 688 N.W.2d 439. Section 242.05(1) generally attacks certain transfers made without reasonably equivalent value. As discussed in greater detail below, the Becks try to argue that subsec. (1) was proven at trial-but the circuit court did not so conclude. Rather, the circuit court clearly stated that it found the transfers from BidRX to Fiscal were fraudulent under subsec. (2).
¶ 13 WISCONSIN STAT. § 242.05(2) -the analog to UFTA § 5(b) -provides:
(2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.
Sec. 242.05(2).
¶ 14 This provision addresses what is sometimes called a "preferential transfer"-"a novel category of fraudulent transaction" based on bankruptcy principles. See UFTA § 5 cmt. (2); see also Prairie Lakes Health Care Sys., Inc. v. Wookey , 1998 SD 99, ¶ 14, 583 N.W.2d 405, 413 ("One of the innovations in the UFTA is its adoption of a bankruptcy concept to create a novel category of fraudulent transaction, the preferential transfer."). It is so named because it attacks "a transfer by an insolvent debtor" to pay an "antecedent debt" to *216 preferred insiders. See UFTA § 5 cmt. (2). As one court explained, "While it has been held that debtors generally may prefer one creditor over another in applying assets to discharge their obligations, [ UFTA § 5(b) ] curtails this privilege if the debtor is insolvent at the time and the preference is to an insider." Farstveet v. Rudolph , 2000 ND 189, ¶ 22, 630 N.W.2d 24, 31. The provision is aimed at "diminishing the sometimes unfair advantages insiders possess when they are familiar with the debtor's financial status." Id. ; see also Truelove v. Buckley , 318 Ga.App. 207, 733 S.E.2d 499, 501-02 (2012) (explaining that UFTA § 5(b) attempts to diminish the unfair advantages possessed by insiders); *101 Prairie Lakes , 1998 SD 99, ¶ 14, 583 N.W.2d at 413 (same).
¶ 15 Although we are not aware of any Wisconsin cases definitively setting out the elements for a claim under WIS. STAT. § 242.05(2), other courts construing UFTA § 5(b) consistently describe the elements as follows: (1) the creditor's claim arose before the transfer, (2) the transfer was made to an insider for an antecedent debt, (3) the debtor was insolvent when the transfer was made, and (4) the insider-transferee had reasonable cause to believe the debtor was insolvent. See, e.g. , Federal Refinance Co. v. Klock , 352 F.3d 16, 30 (1st Cir. 2003) ; Truelove , 733 S.E.2d at 501 ; Farstveet , 2000 ND 189, ¶ 23, 630 N.W.2d at 31 ; Prairie Lakes , 1998 SD 99, ¶ 15, 583 N.W.2d at 413.[6] Not only are these elements the consistent teaching of other jurisdictions, they reflect the clear language of § 242.05(2).
*217 ¶ 16 BidRX and Fiscal maintain that the Becks failed to prove all four elements under WIS. STAT. § 242.05(2) -but the failure of any of the four will do. The record and the parties' briefing make clear that the second element-the transfers were made to an insider for an antecedent debt-was not established. BidRX and Fiscal argue that "no evidence" was offered to show "why any transfer was made and for what debt." As subsec. (2) makes clear, the fact of a transfer to an insider is not enough; it is the preferential payment of prior debts to insiders to which the statute is addressed.
¶ 17 The Becks offer two responses. First, they contend the statute does not require proof that the transfers were made for an antecedent debt. The Becks insist WIS. STAT. § 242.05(2)"assumes the existence of an antecedent debt as the reason for the conveyance." But the statute does not say that. Proving that the transfers were made to satisfy an antecedent debt is an integral part of the preferential transfer concept. Subsec. (2)-by its plain terms-addresses preferential transfers where a debtor pays off a debt to an insider who has knowledge of the debtor's insolvency, showing improper preference to that insider as a creditor. It does not, as the Becks' argument suggests, void any and all transfers made to insiders when a debtor is insolvent. Rather, the person attacking the transfer must show that the debtor is improperly preferring insider creditors over others. This is why other jurisdictions clearly hold that proving an antecedent debt is an element of avoiding a transfer under UFTA § 5(b) and thus, by extension, subsec. (2). See, e.g. , Truelove , 733 S.E.2d at 502 (reversing a grant of summary judgment because the case "did not involve an antecedent *218 debt"). The "antecedent debt" language included in our statute compels our agreement with those courts. Reading the requirement to prove "an antecedent debt" out of the subsection turns this language into mere surplusage. Moreover, the Becks offer no authority for the notion that an antecedent debt may be assumed under UFTA § 5(b). The Becks are wrong; fraudulent transfer under subsec. (2) requires proof the transfers were made for an antecedent debt.
¶ 18 The Becks' second response is that even if they failed to prove fraudulent transfer under WIS. STAT. § 242.05(2), they still made their case under subsec. (1). But subsec. (1) is separate from subsec. (2) and has separate elements. Under subsec. (1), a creditor attacking a transfer must show that his or her claim arose prior to the transfer, "the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer," and the debtor was insolvent or became insolvent as a result of the transfer. Badger State Bank , 276 Wis.2d 312, ¶ 14, 688 N.W.2d 439. The court here unmistakably found that the transfers were fraudulent under subsec. (2) because it was made to an insider, not subsec. (1), which does not require that the transfer be made to an insider. And the circuit court never found that the transfers were made without reasonably equivalent value, which would have been necessary to void the transfers under subsec. (1).
¶ 19 This court is not the place to retry the evidence based on another statutory *102 subsection. Our only role is to determine whether the evidence supports the conclusion the circuit court reached under *219 WIS. STAT. § 242.05(2), not to re-examine the evidence and render our own factual and legal conclusions based on other statutes.[7]
¶ 20 Although the Becks attempt, and fail, to sidestep the requirement that they must prove the transfers were for an antecedent debt, they offer no argument at all that the evidence at trial was sufficient to prove the alleged fraudulent transfers were made for an antecedent debt. By making no attempt to demonstrate they met their burden, the Becks have conceded this point on appeal. Our review of the record confirms that no evidence was introduced that would tend to show BidRX transferred money to Fiscal to satisfy a prior debt.
¶ 21 Because the Becks did not present evidence meeting all of the statutory elements to support fraudulent transfer under WIS. STAT. § 242.05(2), we reverse the circuit court's judgment with respect to Fiscal.
B. Judgment Against BidRX
¶ 22 In addition to the judgment against Fiscal, the circuit court issued judgment against BidRX for the balances in the BidRX owned accounts-totaling $2073.77. BidRX takes issue with this, maintaining the judgment was improper because this was a garnishment proceeding, and BidRX was not a named garnishee-only Fiscal and BMO Harris were named as garnishees. We agree.
*220 ¶ 23 WISCONSIN STAT. ch. 812 governs garnishment actions, the first subchapter of which governs nonearnings garnishments like the one that is the subject of this appeal. See WIS. STAT. §§ 812.01 - 812.24. A garnishment action allows the plaintiff creditor to obtain property of the debtor held by third parties on behalf of the debtor, or to recover property owed to the debtor by third parties. Sec. 812.01(1) ("Any creditor may proceed against any person who is indebted to or has any property in his or her possession or under his or her control belonging to such creditor's debtor ...."). A garnishment proceeding is separate from the action establishing the debtor's liability to the plaintiff creditor in the garnishment action. Sec. 812.01(2a). The whole theory of a garnishment action is that the plaintiff creditor is seeking the funds of the named garnishee(s)-in this case, Fiscal and BMO Harris. See §§ 812.01 - 812.24. We are not aware of any provision in the nonearnings garnishment subchapter of ch. 812 suggesting that money judgments may be ordered against nongarnishees-including the debtor. We fail to see how the circuit court could enter a judgment against BidRX; the trial was about recovering property being held by Fiscal and BMO Harris.
¶ 24 The Becks respond by pointing to WIS. STAT. § 812.16(2), which allows the court to "adjudge the recovery of any debt." But § 812.16(2) does not say anything about a judgment against the debtor; it speaks of "[t]he judgment against a garnishee." Although BidRX as the debtor had the right to "defend the garnishment action upon any ground upon which [the] garnishee might defend" and could "participate in the trial," see WIS. STAT. § 812.15(1), the action remains one to recover property held by the garnishee, see WIS. STAT. § 812.01(1).
*221 ¶ 25 The Becks also suggest WIS. STAT. § 242.07 gives the court broad equitable authority when assets have been fraudulently transferred. But as we have already concluded, the elements of fraudulent transfer were not established.
*103 ¶ 26 While we understand the Becks are pursuing collection of amounts owed by BidRX, no authority provided supports a judgment against the underlying nongarnishee debtor in this proceeding. A garnishment judgment against BMO Harris for its BidRX-owned accounts could be a different story. But that is not the judgment we have before us. In short, if there is an argument supporting the circuit court's action, the Becks have not made it. Therefore, we reverse the circuit court's $2073.77 judgment against BidRX.
CONCLUSION
¶ 27 We reverse the judgment against Fiscal because the Becks failed to provide evidence supporting each of the statutory elements necessary to establish fraudulent transfer under WIS. STAT. § 242.05(2). The circuit court's judgment against BidRX must also be reversed because no authority provided supports such a judgment when BidRX was not a garnishee in this action.
By the Court. -Judgment reversed.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The Becks also offered Fiscal's articles of organization. But the parties agreed that BidRX's attorney organized Fiscal on September 23, 2016, and the articles of organization were not entered into evidence.

The Becks' attorney argued that BidRX "was not paying its debt as it came due" and was therefore insolvent.

BidRX and Fiscal also raise other grounds for reversal: the circuit court should have dismissed the garnishment complaint because it was not properly filed as a separate action, the complaint did not satisfy the applicable pleading standards, and the complaint failed to give adequate notice of the fraudulent transfer claim. Since we reverse the judgment in full, we need not address these arguments.

See, e.g. , Wis. Stat. § 242.04(1)(a) (attacking transfer made "[w]ith actual intent to hinder, delay or defraud").

Prairie Lakes Health Care Sys. v. Wookey , 1998 SD 99, ¶ 15, 583 N.W.2d 405, 413, divides the second element into two parts-(a) the transfer was made to an insider (b) for an antecedent debt. However, the core elements remain the same.

The Becks also suggest that the evidence satisfied the standards for actual fraud under Wis. Stat. § 242.04(1)(a). This assertion goes no further for the same reasons.