**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

_DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES._

**March 2, 2021**

# In the Court of Appeals of Georgia

A20A1745. AGRICOMMODITIES, INC. v. MOORE et al.

REESE, Presiding Judge.

In this fraudulent conveyance action, Agricommodities, Inc., appeals from the superior court's denial of its motion for new trial in favor of Pamela Moore and Joseph Moore. For the reasons set forth infra, we affirm the court's decision regarding Pamela Moore because some evidence presented at the bench trial supported the trial court's conclusion. However, we reverse the trial court's decision regarding Joseph Moore because the court should have entered a default judgment against him, and remand for further proceedings consistent with this opinion.

Construed in favor of the judgment,[1] the record shows the following. Pamela and Joseph are the adult children of Wilbur Moore, Jr.[2] In 2012, Agricommodities obtained a default judgment against "Buddy Moore," an alias used by Wilbur, for approximately $33,000. Wilbur subsequently filed for bankruptcy, and listed his debt to Agricommodities as part of the petition. The bankruptcy court dismissed his petition in 2014.

Wilbur executed a quitclaim deed in 2014 giving his dairy farm to Joseph and a quitclaim deed in 2015 giving his home to Pamela and Virginia Moore, Wilbur's wife. Virginia and Wilbur divorced in 2016. In the divorce decree, the court, "[r]ather than . . . set[ting] aside such transfers or tak[ing] other legal actions regarding same," ordered that the home be sold for $81,500. At the home's closing, the court ordered that $40,000 be disbursed to Virginia, $6,600 to the lawyers and title company, and the remainder to Wilbur. The court also ordered that the dairy farm remain with Joseph. Although a non-party to the divorce, Pamela complied with the court's order. Pamela and Virginia sold their interest in the house to a third party, and they

---

[1] See *Braswell v. Benton*, 351 Ga. App. 372 (830 SE2d 758) (2019).

[2] For the sake of clarity, we will refer to the Moore family members by their first names.

disbursed the funds as specified in the court's order. Consistent with the order, Pamela did not receive anything from the sale.

In 2017, Agricommodities sued Pamela, Joseph, and Wilbur, asserting that Wilbur's transfers of the dairy farm and the home to Joseph and Pamela were fraudulent conveyances. Agricommodities sought a lien on the dairy farm, Pamela's proceeds from the sale of the house, and any other remedy justified by the fraudulent conveyance statute. Pamela responded to the complaint and testified at trial, but Joseph did not. Wilbur died shortly after Agricommodities filed the complaint. After a bench trial, the court found in favor of Joseph and Pamela. Agricommodities filed a motion for new trial, which the trial court denied, and this appeal followed.

> On appellate review of a bench trial, the factual findings shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The clearly erroneous test is the any evidence rule. If there is any evidence to support the findings of fact by a trial court sitting without a jury, then the appellate court affirms without interference with or disturbing such factfindings.[3]

---

[3] *Braswell*, 351 Ga. App. at 372 (citations and punctuation omitted).

"We review any questions of law decided by the trial court, however, de novo."[4] With these guiding principles in mind, we now turn to Agricommodities's claims of error.

1. In related claims of error, Agricommodities argues that the trial court erred in failing to find that the transfer of the home from Wilbur to Pamela was a fraudulent conveyance, and for failing to order a money judgment against her.

At the time the transfers were made, fraudulent transfers under Georgia's Uniform Fraudulent Transfers Act ("UFTA")[5] were "broadly separated into two classifications: actual fraud and constructive fraud."[6] The code section for constructive fraud, OCGA § 18-2-75 (a) (2014), provided:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange

---

[4] *Davison v. Citizens Bank & Trust Co.*, 338 Ga. App. 671, 672 (791 SE2d 437) (2016).

[5] The UFTA was superseded by Ga. L. 2015, pp. 996 & 1029, effective July 1, 2015, and is now known as the Uniform Voidable Transactions Act. See OCGA § 18-2-70 et seq.

[6] *Truelove v. Buckley*, 318 Ga. App. 207, 210 (1) (733 SE2d 499) (2012) (citation and punctuation omitted) (noting the similarities between Georgia's UFTA and North Dakota's UFTA).

4

for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

A creditor proceeding under OCGA § 18-2-75 need not show an actual intent to defraud, and the fact that the transferee had no knowledge of the debtor's insolvency is irrelevant under this code section.[7] Still, the creditor must show that the debtor did not receive "reasonably equivalent value" for the exchange.[8] By contrast, a creditor proceeding under OCGA § 18-2-74 (a) (1) (2014), the code section for actual fraud, must show an "actual intent to hinder, delay, or defraud any creditor of the debtor[.]" OCGA § 18-2-74 (b) (2014) lists "badges of fraud" that a court may consider in determining intent.[9]

In this case, neither party requested findings of fact, and the court did not issue any factual findings in its order.[10] Nevertheless, applying the "any evidence" standard

---

[7] See *Truelove*, 318 Ga. App. at 210-211 (1).

[8] See OCGA § 18-2-75 (a) (2014).

[9] See *Target Corp. v. Amerson*, 326 Ga. App. 734, 737-738 (1) (755 SE2d 333) (2014).

[10] See *Dasher v. Dasher*, 283 Ga. 436, 437 (1) (658 SE2d 571) (2008) ("[A] superior court judge is not required to make findings of fact in a nonjury trial unless requested to do so by one of the parties prior to the entry of the written judgment[.]") (citation and punctuation omitted); see also OCGA § 9-11-52 (a).

of review,[11] some evidence presented at trial supported the court's judgment in favor of Pamela. Pamela complied with the divorce court's order to sell the marital home and to give the bulk of the proceeds to Wilbur and Virginia. The evidence thus supported a finding that Wilbur received reasonably equivalent value for his interest in the marital home, which would defeat a claim for a constructive fraudulent conveyance. Moreover, given that Wilbur and Pamela complied with the divorce court's order to sell the home, the evidence also supported a finding that their intent was not to defraud the creditor. Accordingly, because some evidence supported the court's judgment, we affirm the trial court's decision in favor of Pamela.[12]

2. Agricommodities argues that the trial court erred in failing to enter a default judgment against Joseph. We agree.

The record shows that the sheriff served Joseph at his residence to someone who resided with Joseph.[13] Joseph never filed an answer, and he did not appear at

---

[11] See *Braswell*, 351 Ga. App. at 372.

[12] See OCGA §§ 18-2-74 (a) (1) (2014); 18-2-75 (a) (2014); see also *Crowder v. Crowder*, 281 Ga. 656, 658-659 (642 SE2d 97) (2007) (affirming the decision of the trial court because "the issues on appeal depend[ed] upon the factual determinations made by the trial court as factfinder and neither party asked the trial court to make factual findings[ ]").

[13] See *Yelle v. U. S. Suburban Press*, 216 Ga. App. 46, 47 (453 SE2d 108) (1995) ("The sheriff's return of service constitutes prima facie proof of the facts

trial. Thus, Joseph was in default, and Agricommodities was "entitled to judgment 'as if every item and paragraph of the complaint or other original pleading were supported by proper evidence.'"[14] Additionally, unlike the transfer with Pamela, the record does not indicate that Wilbur received any proceeds from the transfer of the dairy farm to Joseph. Accordingly, we reverse and remand for entry of a default judgment against Joseph and a determination of damages under OCGA §§ 18-2-77 and 18-2-78 (2014).[15] Possible remedies under these sections include a voidance of the transfer, attachment of the property, a money judgment for the value of the property or the value of the debt, whichever is less, or any other relief the circumstances may require.[16]

*Judgment affirmed in part and reversed in part, and case remanded. Markle and Colvin, JJ., concur.*

---

recited therein[.]"); see also OCGA § 9-11-4 (e) (7).

[14] *Willis v. Allstate Ins. Co.*, 321 Ga. App. 496, 498 (740 SE2d 413) (2013) (quoting OCGA § 9-11-55 (a)).

[15] See *Moss v. Wilkie*, 210 Ga. App. 688, 689 (2) (437 SE2d 367) (1993).

[16] See OCGA §§ 18-2-77 (2014); 18-2-78 (2014).