**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 6, 2022**

# In the Court of Appeals of Georgia

A22A0256. TUGGLE et al. v. AMERIS BANK.

PHIPPS, Senior Appellate Judge.

In this action to set aside fraudulent transfers, defendants Jessie Tuggle and his wife DuJuan Tuggle appeal from the trial court's order denying their motion for summary judgment and granting summary judgment to plaintiff Ameris Bank, as successor of Hamilton State Bank ("HSB"). The Tuggles challenge several of the trial court's rulings under Georgia's Uniform Fraudulent Transfers Act ("UFTA" or the "Act"), OCGA § 18-2-70 et seq. (2014).[1] They also argue that the trial court erred

---

[1] Because the transfers at issue here occurred in 2014, they are governed by the UFTA. See OCGA § 18-2-70 et seq. (2014). The UFTA was superseded by Ga. L. 2015, pp. 996, 1019-1027, 1029, §§ 4A-1, 7-1, effective July 1, 2015, and is now known as the Uniform Voidable Transactions Act. See OCGA § 18-2-70 et seq. (2021); *Ga. Commercial Stores v. Forsman*, 342 Ga. App. 542, 542, n. 1 (803 SE2d 805) (2017). Unless otherwise noted, all Georgia statutes cited in this opinion are the ones in effect in 2014.

when it (a) rejected their claims that OCGA § 9-12-93 and the doctrine of laches bar Ameris's action and (b) awarded attorney fees to Ameris under OCGA § 13-6-11. For the reasons that follow, we reverse the OCGA § 13-6-11 attorney fee award but otherwise affirm the trial court's rulings.

The record shows that, in February 2012, Hammer Investments LLC executed a renewal promissory note in favor of Douglas County Bank ("DCB") in the amount of $464,138.94. At that time, Jessie — Hammer Investments's sole member — executed a guaranty of the indebtedness on the note in favor of DCB. As security for the indebtedness, Hammer Investments granted DCB security interests in parcels of real property in Spalding and Fayette Counties. HSB acquired the promissory note in 2013. Hammer Investments and Jessie subsequently failed to make payments as required under the promissory note, and, in April 2014, HSB foreclosed on the Spalding and Fayette County properties. In June 2016, HSB obtained a default judgment totaling $149,019.43 against Jessie and Hammer Investments, representing the remaining balance due on the promissory note following the foreclosure sales. Ameris Bank subsequently acquired HSB. In the interim, on November 14, 2014, Jessie executed quitclaim deeds transferring two parcels of real property in Johns Creek to DuJuan for one dollar each and for "Love and Affection," as "Deed[s] of

2

Gift."[2] The Tuggles estimated the two properties to be worth a total of more than $1 million at the time of the transfers.

The current action began in April 2019, when Ameris, as successor of HSB, sued the Tuggles, seeking to set aside the transfers of the Johns Creek properties as fraudulent under OCGA §§ 18-2-74 and 18-2-75. Ameris alleged, in relevant part, that the purpose of the transfers was to place the properties beyond the reach of Jessie's creditors, including Ameris, which currently is owed more than $150,000 from the June 2016 default judgment. Ameris also sought attorney fees under OCGA § 13-6-11.

Following discovery, Ameris moved for summary judgment on its claims for fraudulent conveyance under OCGA § 18-2-75 (a) and attorney fees under OCGA § 13-6-11. The Tuggles filed a cross-motion for summary judgment, presumably on all claims against them, arguing that Jessie's conveyances to DuJuan were valid and

---

[2] Jessie later executed a corrective quitclaim deed again transferring one of the Johns Creek properties to DuJuan in July 2015. The corrective deed identifies the consideration as "One Dollar and other good and valuable consideration delivered to Grantor by Grantees [sic] at and before the execution" of the deed. The Tuggles do not contend that the "other good and valuable consideration" listed in the corrective deed refers to any additional consideration for the property beyond that identified in the initial deed. According to the Tuggles, the purpose of the corrective deed was "to correct the names in the execution block of the original conveyance."

3

binding and that any liens on the transferred properties were discharged four years after the conveyances under OCGA § 9-12-93. In their opposition to Ameris's summary judgment motion, the Tuggles also contended that the doctrine of laches barred Ameris's claims.

The trial court granted summary judgment to Ameris and denied summary judgment to the Tuggles. As to the fraudulent conveyance claims, the court concluded that: (i) Jessie's indebtedness to Ameris arose before he transferred the Johns Creek properties; (ii) the transfers were not for "reasonably equivalent value"; and (iii) Jessie became insolvent as a result of the transfers. See OCGA § 18-2-75 (a). The court further rejected the Tuggles' claims that Ameris was guilty of laches for failing to levy on the Johns Creek properties earlier and that OCGA § 9-12-93 barred Ameris's suit. Finally, the court granted Ameris's request for OCGA § 13-6-11 attorney fees after finding that the Tuggles acted in bad faith by fraudulently transferring the properties. This appeal followed.

1. The Tuggles first challenge the grant of summary judgment to Ameris, contending that the trial court erred when it (a) ruled that Jessie did not receive reasonably equivalent value when he transferred the Johns Creek properties, (b) determined that Jessie was insolvent following the transfers, and (c) awarded

4

OCGA § 13-6-11 attorney fees to Ameris. We agree that the trial court erred by awarding attorney fees in this case but otherwise reject the Tuggles' claims.

We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovants. *City of St. Marys v. Reed*, 346 Ga. App. 508, 508-509 (816 SE2d 471) (2018). Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Id. at 508; see OCGA § 9-11-56 (c). "[T]he burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 819 (3) (a) (670 SE2d 469) (2008) (citation and punctuation omitted); see OCGA § 9-11-56 (c). If the movant meets this burden, the nonmovants "cannot rest on [their] pleadings, but rather must point to specific evidence giving rise to a triable issue." *Ellison*, 294 Ga. App. at 819 (3) (a) (citation and punctuation omitted); see OCGA § 9-11-56 (e).

(a) At the time the transfers at issue here were made, fraudulent transfers under Georgia's UFTA "were broadly separated into two classifications: actual fraud and constructive fraud." *Agricommodities, Inc. v. Moore*, 359 Ga. App. 1, 2-3 (1) (854

5

SE2d 781) (2021) (citations and punctuation omitted). The Code section for constructive fraud, OCGA § 18-2-75 (a) — the statute primarily at issue here — provided:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Thus, while a creditor proceeding under OCGA § 18-2-75 (a) need not show an actual intent to defraud, "the creditor must show that the debtor did not receive 'reasonably equivalent value' for the exchange." *Agricommodities, Inc.*, 359 Ga. App. at 3 (1). In that regard, the UFTA provided that "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied . . . ." OCGA § 18-2-73 (a). The Act defined "property" as "anything that may be the subject of ownership." OCGA § 18-2-71 (10).

(i) The Tuggles first maintain that Ameris cannot satisfy the elements of this claim because the transfers of the Johns Creek properties "were made for Love and Affection," which, they claim, constitutes "valuable consideration." They also assert

6

that the conveyances were predicated, in part, on cognitive impairments experienced by Jessie.

> The UFTA is modeled on the Uniform Fraudulent Transfer Act promulgated by the National Conference of Commissioners on Uniform State Laws and adopted in various forms by 43 states and the District of Columbia. For this reason, and in light of the dearth of Georgia decisions construing the provisions of the Georgia UFTA, we look to the decisions of other jurisdictions for guidance.

*Truelove v. Buckley*, 318 Ga. App. 207, 209 (1) (733 SE2d 499) (2012) (citations and punctuation omitted).

We first note that the question presented here is not — as the Tuggles suggest — whether "love and affection" may constitute "valuable consideration" under the UFTA. Rather, the question is whether "love and affection" may constitute "reasonably equivalent value" for the property exchanged. See OCGA § 18-2-75 (a). The parties have not cited, and research has not revealed, any Georgia appellate decisions addressing this question. Several decisions from other jurisdictions, however, each have answered this question in the negative. See *In re Marlar*, 267 F3d 749, 752, 755-756 (II) (8th Cir. 2001) (applying Ark. Code Ann. § 4-59-205 (a) (2001), part of the Arkansas Fraudulent Transfer Act, and concluding that "ten dollars

7

with love and affection" did not constitute "reasonably equivalent value" for the transfer of more than 700 acres of farmland to the transferor's son); *Truist Bank v. Farmer*, No. 2:20-cv-00139, 2021 U.S. Dist. LEXIS 64484, at *3, 5 (II) (B), 9-10 (III) (B) (S.D. W. Va. Apr. 2, 2021) (concluding that, under the West Virginia UFTA, "[l]ove and affection, while nice, d[id] not constitute reasonably equivalent value in exchange for" two interests in real property valued at $90,750 each); *In re Blair*, 594 BR 712, 752 (V) (A) (7) (Bankr. D. Colo. 2018) ("love and affection" do not constitute "reasonably equivalent value," which "means some sort of economic benefit," under the Colorado UFTA); *DWC3, Inc. v. Kissel*, 246 N.C. App. 361 (784 SE2d 237), 2016 N.C. App. LEXIS 261, at *11 (II), n. 1, 13-16 (II) (2016) ("love and affection" do not constitute "reasonably equivalent value" with respect to a transfer of real property and other assets for purposes of the North Carolina UFTA); see also *In re Treadwell*, 699 F2d 1050, 1051 & n. 1 (11th Cir. 1983) (holding that a debtor's transfer of $4,000 to his daughters for "love and affection" could be avoided under the Bankruptcy Code's fraudulent transfer provisions because the transfer was made for "less than a reasonably equivalent value" under former 11 USC § 548 (a) (2) (A), currently codified at 11 USC § 548 (a) (1) (B) (i), which is largely analogous to

8

OCGA § 18-2-75 (a))[3]; *McPherson Oil Co. v. Massey*, 643 S2d 595, 596-597 (Ala. 1994) (holding that a transfer of property to a family member for "love and consideration" was fraudulent as to a creditor under Ala. Code 1975 § 8-9A-4, part of the Alabama UFTA); see also generally *SE Property Holdings v. Center*, No. 15-0033-WS-C, 2016 U.S. Dist. LEXIS 180248, at *21-30 (III) (D) (S.D. Ala. Dec. 30, 2016) (concluding that neither "emotional support" received from the transferees nor benefits in the form of tax savings and improved asset management expected to be realized by the debtor from the transfers of real property, interests in an LLC, and stock shares constituted "reasonably equivalent value" under the Alabama UFTA).

The decisions cited above are in accord with the proposition that, because the UFTA's purpose is to protect creditors from the depletion of a debtor's estate to the prejudice of unsecured creditors, the adequacy of consideration for purposes of the Act should be determined from the standpoint of the creditor, not the debtor. See

---

[3] "Because UFTA's definition of 'value' is based on . . . the Bankruptcy Code, courts interpreting UFTA-based statutes consider analogous bankruptcy authority to be instructive of the proper meaning and application of that term and the related concept of reasonably equivalent value." *Janvey v. Golf Channel*, 59 Tex. Sup. Ct. J. 587 (II) (C) (I) (487 SW3d 560, 572) (2016); accord *Schempp v. Lucre Mgmt. Group*, 18 P3d 762, 764 (I) (Colo. App. 2000) (because § 548 of the Bankruptcy Code has similar language to, and the same purpose as, the UFTA, "interpretations of § 548 are instructive" in UFTA cases).

*Warfield v. Byron*, 436 F3d 551, 557-558, 560 (III) (B) (5th Cir. 2006) (observing, in a case applying the Washington UFTA, that "[t]he primary consideration in analyzing the exchange of value for any transfer is the degree to which the transferor's net worth is preserved"); *SE Property Holdings v. Braswell*, 255 FSupp.3d 1187, 1198 (IV) (B) (S.D. Ala. 2017) (under the Alabama UFTA, "courts must examine the nature and adequacy of the consideration from the standpoint of the creditor, not that of the debtor or the transferee of the subject property"); accord *In re Marlar*, 267 F3d at 756 (II) ("Reasonably equivalent value is a means of determining if the debtor received a fair exchange *in the market place* for the goods transferred.") (citation and punctuation omitted; emphasis supplied); *DWC3, Inc.*, 2016 N.C. App. LEXIS 261, at *11-12 (II) & n. 1 (observing that, under the North Carolina UFTA, "'[v]alue' is to be determined in light of the purpose of the [UFTA] to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors") (citation and punctuation omitted); *Janvey v. Golf Channel*, 59 Tex. Sup. Ct. J. 587 (487 SW3d 560, 564) (2016) (holding that the "reasonably equivalent value" requirement under the Texas UFTA "can be satisfied with evidence that the transferee (1) fully performed under a lawful, arm's-length contract for fair market value, (2) provided consideration that had objective value at the time of the

transaction, and (3) made the exchange in the ordinary course of the transferee's business").[4]

We agree with the analyses in each of the above decisions and hold that consideration of one dollar and love and affection in exchange for the Johns Creek properties did not constitute "reasonably equivalent value" under OCGA § 18-2-75 (a). And while the Tuggles contend that the conveyances also were based on Jessie's "dementia and decline in cognitive functioning," they neither elaborate any arguments nor cite any authority supporting their suggestion that Jessie's condition has any bearing on the value determination under OCGA § 18-2-75 (a), much less that his condition somehow renders the stated consideration objectively valuable to a creditor or the marketplace. See *Warfield*, 436 F3d at 560 (III) (B); *In re Marlar*, 267 F3d at 756 (II); *SE Property Holdings*, 255 FSupp.3d at 1198-1199 (IV) (B); *DWC3, Inc.*, 2016 N.C. App. LEXIS 261, at *12 (II). We therefore deem any such claim abandoned. See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed

---

[4] The Texas UFTA, unlike Georgia's version of the Act, specifically defines "reasonably equivalent value" as "includ[ing] without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." Tex. Bus. & Com. Code § 24.004 (d).

11

abandoned."); *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014) ("[A]n appellant must support enumerations of error with argument and citation of authority, and mere conclusory statements are not the type of meaningful argument contemplated by our rules.") (citation and punctuation omitted); *Karlsberg v. Hoover*, 142 Ga. App. 590, 594 (236 SE2d 520) (1977) ("[A]n appellant is required in its initial brief to file an argument which supports any enumerations of error it does not wish to waive."). Consequently, we affirm the trial court's ruling that the transfers of the Johns Creek properties were not for "reasonably equivalent value" under the Georgia UFTA.

(ii) The Tuggles further contend that Ameris cannot satisfy OCGA § 18-2-75 (a) because Ameris's claim against Jessie first arose in June 2016, when HSB obtained a default judgment against him, well after he transferred the Johns Creek properties in November 2014. We disagree.

For purposes of the UFTA, a "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." OCGA § 18-2-71 (3). Here, the Tuggles do not dispute that Ameris and/or its predecessors-in-interest held a right to payments under the terms of the February

12

2012 promissory note and that the obligation to make such payments extended to Jessie no later than April 2014, when HSB foreclosed on the Spalding and Fayette County properties. Consequently, their claim that "there was no antecedent debt at the time of the [November 2014] transfer[s]" is unsupported by the record.[5]

(b) The Tuggles also challenge the trial court's ruling that Jessie was insolvent following the transfers of the Johns Creek properties. We again discern no error.

For purposes of Georgia's UFTA, "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation," and "[a] debtor who is generally not paying his or her debts as they become due is presumed to be insolvent." OCGA § 18-2-72 (a), (b); see *Ga. Commercial Stores v. Forsman*, 342 Ga. App. 542, 553 (2) (803 SE2d 805) (2017).

In his interrogatory responses, Jessie acknowledged that: (i) he had only one asset to his name — his pension payments (the amounts of which he did not disclose) — from November 14, 2014 (the date of the Johns Creek property transfers), through

---

[5] Contrary to the Tuggles' assertion in their reply brief, nothing in *Truelove*, 318 Ga. App. 207, reasonably may be read to stand for the proposition that "[t]he term claim or obligation, in connection with [OCGA § 18-2-75 (a)], means a judgment lien." Rather, as stated above, the plain language of the UFTA defined "claim" as, inter alia, "a right to payment, *whether or not the right is reduced to judgment*." OCGA § 18-2-71 (3) (emphasis supplied).

13

November 2018 (when he submitted his interrogatory responses); and (ii) he or an entity in which he maintained an interest owed a past-due debt of $454,611.45 during that same time period. While this record evidence is minimal, Jessie's acknowledgment of a past-due debt and lack of liquid assets was sufficient to establish the presumption that, as of the date of the Johns Creek property transfers, he was insolvent. See *Ga. Commercial Stores*, 342 Ga. App. at 548 (1), 553 (2) (evidence that an entity was unable to repay all of its debts as they matured and that its debts exceeded its assets was sufficient to show that the entity was insolvent). Notably, the Tuggles made no argument to the contrary in their cursory opposition to Ameris's summary judgment motion, and, in their appellate briefs, they identify no record evidence rebutting the statutory presumption of insolvency.[6] Consequently,

---

[6] Importantly, the Tuggles point to no record evidence suggesting that Jessie's pension payments — his only asset — are adequate to satisfy his nearly half-million-dollar past-due debt. Moreover, their conclusory assertion in their Reply Brief that they currently are jointly paying the mortgages on the Johns Creek properties finds no support in the portions of the record they cite as a basis for that claim. Finally, while the Tuggles correctly maintain that insolvency generally is a jury question, see, e.g., *Hadlock v. Anderson*, 246 Ga. App. 291, 293 (1) (540 SE2d 282) (2000), it remains amenable to summary judgment, just like any other question of fact. See *Rapp v. Escante, Inc.*, 304 Ga. App. 262, 263, 265-266 (1) (695 SE2d 744) (2010) (concluding that "[t]he trial court did not err in deciding as a matter of law that [the appellant] was insolvent when the property was transferred" and granting summary judgment on that basis in a case brought under Georgia's UFTA); also generally OCGA § 9-11-56 (c).

14

they have not met their burden of establishing error in this regard, and we affirm the trial court's ruling on this issue. See generally *Tolbert v. Toole*, 296 Ga. 357, 363 (3) (767 SE2d 24) (2014) ("It is [the appellant]'s burden, as the party challenging the ruling below, to affirmatively show error from the record on appeal.").

(c) The Tuggles further challenge the trial court's ruling awarding OCGA § 13-6-11 attorney fees to Ameris. We agree that the award is improper.

OCGA § 13-6-11 provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, *the jury may allow them*." (Emphasis supplied.)

> [A]ttorney fees cannot be awarded by a trial court pursuant to OCGA § 13-6-11 at the summary-judgment stage of proceedings because the very language of the statute prevents a trial court from ever determining that a claimant is entitled to attorney fees as a matter of law. . . . [B]ecause both the liability for and amount of attorney fees pursuant to OCGA § 13-6-11 are solely for the jury's determination, a trial court is not authorized to grant summary judgment in favor of a claimant therefor. And although a trial court is permitted to grant such fees when it sits as a trier of fact, it is not a trier of fact on a motion for summary

15

judgment. Accordingly, the trial court here was without authority to grant attorney fees pursuant to OCGA § 13-6-11 on summary judgment.

*Sherman v. Dickey*, 322 Ga. App. 228, 233-234 (2) (744 SE2d 408) (2013) (citations and punctuation omitted). We therefore reverse the trial court's award of OCGA § 13-6-11 attorney fees.

2. The Tuggles also challenge the denial of their motion for summary judgment, arguing that: (a) the trial court erred when it ruled that love and affection do not constitute sufficient consideration under the UFTA; (b) when making that determination, the trial court erred by failing to consider a psychologist's affidavit the Tuggles submitted in support of their claims; and (c) the court also erred when it rejected the Tuggles' contentions that Ameris's claims are barred by OCGA § 9-12-93 and by laches. The Tuggles have not shown reversible error on any of these claims.

(a) Our ruling in Division 1 (a) disposes of the Tuggles' contention that love and affection may constitute sufficient consideration for purposes of the UFTA.

(b) In support of their motion for summary judgment, the Tuggles submitted an affidavit by a licensed clinical psychologist, who attested that Jessie suffers from significant cognitive problems and psychological issues, including dementia,

16

executive dysfunctioning, memory disturbance, and mild visual motor disturbance. On that basis, the psychologist determined that all of Jessie's important business or financial decisions should be made with his wife or a financial advisor.

The Tuggles contend that the trial court erred by failing to consider the psychologist's affidavit when it denied their motion for summary judgment. However, the Tuggles do not explain — much less cite any legal authority shedding any light on — how the psychologist's opinions bear any relevance to the trial court's determination that Jessie did not receive "reasonably equivalent value" when he transferred the Johns Creek properties to DuJuan. We therefore deem this issue abandoned.[7] See Court of Appeals Rule 25 (c) (2); *Brittain*, 329 Ga. App. at 704 (4) (a); *Karlsberg*, 142 Ga. App. at 594.

(c) (i) The Tuggles contend that Ameris's fraudulent transfer claim is barred by OCGA § 9-12-93. That statute provides, in relevant part:

> When any person has bona fide and for a valuable consideration *purchased* real or personal property and has been in the possession of the real property for four years or of the personal property for two years,

---

[7] Neither of the two appellate decisions the Tuggles cite in support of this enumeration of error address the UFTA or the concept of "reasonably equivalent value." See generally *Jones v. Gordon*, 182 Ga. App. 29 (354 SE2d 658) (1987); *Nelson v. M & M Products Co.*, 168 Ga. App. 280 (308 SE2d 607) (1983).

such property shall be discharged from the lien of any judgment against the person from whom it was purchased or against any predecessor in title of real or personal property.

OCGA § 9-12-93 (emphasis supplied). The Tuggles contend that any lien on the Johns Creek properties resulting from the June 2016 default judgment against Jessie has been discharged because DuJuan has been in possession of the properties for more than four years.

It is undisputed, however, that the conveyances of the Johns Creek properties to DuJuan were gifts. As a result, DuJuan is not a "purchaser" under the statute, which therefore has no application here. See generally *Huggins v. Powell*, 315 Ga. App. 599, 605-606 (3) (726 SE2d 730) (2012) (observing that "[a] *purchaser* seeking the benefit and protection of [OCGA § 9-12-93] must prove three things: (1) that he acted in good faith; (2) that he paid a valuable consideration; and (3), in cases involving realty, that he has been in possession for four years," and that "[t]he burden of proof is placed upon the *purchaser* to prove good faith") (citation and punctuation omitted; emphases supplied).

Regardless, it also is undisputed that both Johns Creek properties are subject to mortgages. And the four-year period in OCGA § 9-12-93 does not begin to run

18

while the property at issue is encumbered. See *Cohutta Mills, Inc. v. Hawthorne Indus.*, 179 Ga. App. 815, 818 (2) (348 SE2d 91) (1986). Consequently, the Tuggles have not shown that OCGA § 9-12-93 bars Ameris's suit, and we affirm the trial court's ruling that it does not.

(ii) Finally, the Tuggles contend that Ameris's claims against them are barred by the doctrine of laches. Once again, however, they do not cite any legal authority in support of this claim, which we deem abandoned. See Court of Appeals Rule 25 (c) (2); *Brittain*, 329 Ga. App. at 704 (4) (a); *Karlsberg*, 142 Ga. App. at 594. We therefore similarly affirm the trial court's ruling on laches.

*Judgment affirmed in part and reversed in part. Doyle, P. J., and Reese, J., concur.*